**In re THE IT GROUP, INC., et al., Debtors.**

**No. 02–10118(MFW).**

United States Bankruptcy Court, D. Delaware.

April 14, 2005.

---

James E. Huggett, Esquire, Flaster/Greenberg PC, Wilmington, DE, Jeffrey D. Kurtzman, Esquire, Klehr, Harrison, Harvey, Branzburg & Ellers LLP, Wilmington, DE, for Mid Atlantic Tank Inspection Service, Inc.

Christopher S. Sontchi, Esquire, Ashby & Geddes, Wilmington, DE, for The Shaw Group, Inc.

Marion M. Quirk, Esquire, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, DE, for the Debtors.

Jeffrey M. Schlerf, Esquire, The Bayard Firm, Wilmington, DE, for the Creditors' Committee.

Mark S. Kenney, Esquire, Office of the U.S. Trustee, Wilmington, DE, U.S. Trustee.

## OPINION [1]

MARY F. WALRATH, Chief Judge.

Before the Court is the Motion of Mid Atlantic Tank Inspection Service, Inc. ("MATIS") for Summary Judgment on its Motion to Compel the Debtors to comply with this Court's order approving the sale of substantially all the Debtors' assets to The Shaw Group, Inc. ("Shaw"). Shaw has filed a Cross Motion for Summary Judgment in its favor. For the reasons set forth below, we will deny MATIS' motion and grant Shaw's motion for summary judgment.

## I. FACTUAL BACKGROUND

The IT Group, Inc., and several of its affiliates (collectively "the Debtors") filed voluntary chapter 11 petitions on January 16, 2002. Pre-petition, the Debtors had a contract with the United States Air Force to provide storage fuel replacement and maintenance services to Air Force bases around the globe. The Debtors subcontracted some of the work to MATIS pursuant to a contract which set forth the terms of the parties' general business relationship ("the Work Agreement"). Pursuant to the Work Agreement, the Debtors would send MATIS purchase orders for work to be performed on specific projects. From 1999 to 2001, the Debtors issued a number of purchase orders to MATIS. The parties agree that some of the purchase orders were completed prior to the bankruptcy filing, but disputes remain regarding the status of many of the purchase orders as of the petition date.

Shortly after filing their chapter 11 petitions, the Debtors filed a motion for approval of the sale of substantially all their assets ("the Sale Motion"). The Sale Motion also asked the Court to approve the assumption and assignment of certain executory contracts to the successful bidder. After several hearings, we entered an order on April 25, 2002 ("the Sale Order") approving the sale of assets, including certain assumed executory contracts, to Shaw.

One year later, on April 16, 2003, MATIS filed a Motion to Compel the Debtors to comply with the Sale Order. MATIS asserts that the Debtors had assumed and assigned the MATIS contracts to Shaw and that, consequently, Shaw was now responsible to cure defaults under the contracts. The Debtors filed a limited re-

---

1. This Opinion Constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

sponse agreeing with MATIS that Shaw had bought the MATIS contracts and that the Debtors had no further responsibility to MATIS. The Official Committee of Unsecured Creditors joined the Debtors' response.

Shaw objected to the Motion arguing that the Debtors' contracts with MATIS had not been assumed and assigned because (1) this Court never approved the assumption of those particular contracts, and (2) the contracts had either been completed or terminated prior to the bankruptcy filing and thus were not executory contracts and not assumable.[2]

MATIS filed a motion for summary judgment on the dispute on May 27, 2004. Shaw filed a response and cross-motion for summary judgment. The motions have been fully briefed and are now ripe for decision.

## II. *JURISDICTION*

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A), (N), & (O).

## III. *DISCUSSION*

### A. *Standard for Summary Judgment*

The party filing a motion for summary judgment bears the burden of proving that it has established all the elements of its case entitling it to judgment in its favor and that there is no genuine issue of material fact in dispute. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material' ... and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted).

Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial. Fed. R. Bankr.P. 7056. *See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982) ("Rule 56(e) does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions"); *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir.1972) ("Conclusory statements, general denials, and factual allegations not based on personal knowledge would be insufficient to avoid summary judgment"); *Tripoli Co., Inc. v. Wella Corp.,* 425 F.2d 932, 935 (3d Cir.1970) (holding that to defeat summary judgment motion, "a party must now come forward with affidavits setting forth specific facts showing that there is a genuine issue for trial"). Unsworn statements of counsel in memoranda submitted to the court are "insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990).

### B. *MATIS' Motion for Summary Judgment*

MATIS argues that during the sale of the Debtors' assets Shaw made repeated

---

**2.** Because we find that the MATIS contracts were never assumed, we do not address Shaw's second argument that the contracts were either terminated or completed pre-petition.

representations that MATIS' contracts with the Debtors were being assumed and assigned to Shaw. Thus, MATIS believes that Shaw should be judicially estopped from arguing that the contracts were not assumed and assigned through the Sale Order. Alternatively, MATIS argues that res judicata and the doctrine of the law of the case require a finding that the contracts were assumed and assigned to Shaw.

Shaw argues that the undisputed facts are inadequate to support MATIS' motion for summary judgment. It asserts that court approval is required before a contract can be assumed, and that none of the MATIS contracts were approved under the Sale Order. As evidence that no MATIS contract was actually assumed, Shaw notes that no MATIS contract was listed in the Schedule of assumed contacts attached to the Asset Purchase Agreement ("the APA"), which was approved by the Sale Order.

The Sale Motion filed on January 25, 2002, stated that the Debtors would designate the executory contracts that would be assumed and assigned as part of the asset sale. The Sale Motion explained that notice of the intended assumption/assignment and the cure amount to be paid would be provided to all parties with contracts that the Debtors intended to assume. It further advised that each contract party would have an opportunity to object to the assumption and assignment of its contract and the cure amount which the Debtors felt was due.

On January 28, 2002, Shaw filed the APA which stated that Shaw was buying "all interest of [the Debtors] in the Assumed Contracts." The APA contained an extensive definition section that contained the following pertinent definitions:

Assumed Contracts: "all Contracts of Sellers other than the Excluded Contracts and the Completed Contracts." Completed Contracts: "Contracts of Sellers (including those listed on Schedule 2.02(b)) under which substantially all of the contractual work effort of Sellers has been completed, even if such Contracts have continuing warranty obligations, administrative matters or work related to warranty or other claims." Excluded Contracts: "all Contracts other than Completed Contracts and Immaterial Contracts (I) which are designated as such on Schedule 5.15(b) (as amended or supplemented in accordance with this Agreement) or (ii) which are not listed on Schedule 3.17 [Assumed Contracts]."

However, Schedules 2.02(b), 3.17, and 5.15(b), referenced in the definitions, were not filed with the APA on January 28, 2002.

On March 7, 2002, we directed the Debtors to file a list of the contracts which the Debtors intended to assume and assign ("the List") and to provide notice to all the parties to the contracts listed thereon. The List was filed, and notice sent, on March 15, 2002. The List included MATIS and listed a cure amount of $1,154,188.20. The notice accompanying the List stated, "The Debtors seek to assume certain executory contracts ... and assign such contracts ... to Shaw .... If no objection is timely received ... the Assumed Contract shall be deemed assumed and assigned to Shaw or the Successful Bidder(s) on the closing date of such sale." Footnote one on the notice stated,

Nothing contained herein shall be deemed an admission by the Debtors that any contract, lease or other agreement listed on the exhibit attached hereto is, in fact, an executory contract or an unexpired lease. The Debtors specifi-

cally reserve their right to argue that (I) any such contract, lease or other agreement is not an executory contract or an unexpired lease.

On March 26, 2002, Shaw filed the APA again, this time with Schedules 2.02(b) (completed contracts), 5.15(b) (excluded contracts), and 3.17 (assumed contracts) attached. Schedule 3.17 did not list any of the MATIS contracts or a cure amount. On March 28, 2002, Notice of the Shaw APA was sent by the Debtors. The Sale Notice attached the APA but stated that the "List of Assumed Contracts... has been filed with the Bankruptcy Court and is available through PACER at www.deb.uscourts.gov. In addition the List is available at www.theitgroup.com." That List, however, was the List prepared by the Debtors which did contain the MATIS contracts and cure amount.

The auction of the Debtors' assets was held on April 18, 2002, and Shaw was the winning bidder. The next day, April 19, 2002, we held a hearing to consider the sale. On April 25, 2002, we entered the Sale Order approving the sale of assets to Shaw. The Sale Order states:

> The Assumed Contracts shall consist of those unexpired leases and executory contracts listed on Schedule 3.17 to the Agreement attached hereto as Exhibit A.

The MATIS contracts were not listed on Schedule 3.17, which was attached to that Order.

### 1. *Judicial estoppel*

MATIS asserts that Shaw is judicially estopped from arguing that the MATIS contracts were not assumed and assigned. It states that Shaw's attorneys admitted participating in the preparation of the List of assumed contracts that was included with the Debtors' notices to MATIS and others and cannot now argue that those contracts were not, in fact, assumed. Further, MATIS asserts that Shaw should be judicially estopped because Shaw filed an action in Arizona, where Shaw asserted at least one of the MATIS contracts had been assumed and assigned.

The doctrine of judicial estoppel protects the integrity of the judicial process by prohibiting parties from deliberately changing their positions. *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Judicial estoppel is an "extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir.1996) (citation omitted). The criteria for determining when seemingly inconsistent litigation stances justify application of the doctrine are:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith—i.e., with intent to play fast and loose with the court. Finally, a ... court may, not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. General Motors Corporation*, 337 F.3d 314, 319 (3d Cir.2003) (citation omitted).

We conclude that judicial estoppel is not applicable in this case because none of the above three factors have been established. During the sale of the Debtors' assets, Shaw did not take inconsistent positions to the detriment of MATIS. Shaw was interested in buying substantially all

the assets of the Debtors, but made it clear that the contracts to be assumed were only those to be identified in its APA. As part of the asset sale, the Debtors sought to sell hundreds of executory contracts, but Shaw had the ultimate right to decide which it was interested in purchasing and which it was not.

Further, the proposed sale to Shaw was subject to higher and better bids through an auction process. The Debtors did not know who would be the ultimate purchaser and, therefore, endeavored to compile a list of all its executory contracts which could be assumed and assigned. The Court ordered the Debtors to give notice to all parties whose contracts might be assumed by Shaw or by any other purchaser to permit those parties to object to the assumption of their contracts or to the cure amount indicated by the Debtors' books.

Although Shaw may have participated in the preparation of the List for that notice,[3] Shaw ultimately made its decision on which contracts it wanted and filed its own definitive Schedules listing contracts to be assumed under its APA. That pleading does not have MATIS listed as an assumed and assigned contract. The Court entered the Sale Order approving Shaw's APA with its Schedules, which did not include the MATIS contracts. Thus, it is not inconsistent for Shaw to argue now that the MATIS contracts were not assumed and assigned.

■ MATIS asserts that Shaw made inconsistent representations with regard to assumption and assignment of at least one MATIS contract. On September 23, 2002, Shaw filed a complaint in the United States District Court for the District of Arizona against Western Surety, as surety on a performance bond furnished by MATIS to the Debtors in connection with an Air Force project near Tucson, Arizona. MATIS argues that in the Arizona lawsuit, Shaw argued that one of the MATIS purchase orders had been assumed during the Debtors' asset sale. While Shaw's original complaint in the Arizona action was inconsistent with its position today, that complaint was dismissed and Shaw has not filed an amended complaint. Therefore, no final decision was made in that case predicated on Shaw's assertion.

Further, there is no evidence that Shaw filed the Arizona suit or is asserting any claim in this proceeding in bad faith. Bad faith is a prerequisite to judicial estoppel and we find that it is not present under the facts before us.

■ Finally, we find that forcing Shaw to accept the MATIS contracts at this time would not be a remedy tailored to address the harm identified. MATIS has suffered no harm as a result of the Arizona litigation. Further, MATIS cannot claim that it has been harmed as a result of Shaw's alleged representations prior to the Sale Order because assumption of executory contracts cannot occur without final approval of the court. "[C]ourt approval [is] a prerequisite to a debtor's assumption of an executory contract. . . . In order to insure that a debtor has the opportunity to assess the advantages and disadvantages of assuming a contract, assumption must be approved. It cannot be presumed." *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1077 (3d Cir.1992) (internal citations omitted). Although, Shaw and MATIS

---

**3.** The facts are disputed regarding how much Shaw actually participated in creating the List. Shaw provided an affidavit stating that it did not create the List. MATIS points to several statements made in open court by Shaw's attorneys evidencing that Shaw had greater involvement in preparing the List.

disagree about what transpired before the assumption of any contracts, the fact remains that assumption of the Debtors' contracts did not occur until the APA was approved and the Sale Order was entered.

Therefore, we conclude that judicial estoppel is not applicable and MATIS' Motion for Summary Judgment on that ground must be denied.

### 2. *Res Judicata and Law of the Case*

MATIS argues that the doctrines of res judicata and law of the case mandate that its contracts were assumed and assigned because of the interactions between the parties before the Sale Order was entered. The doctrine of res judicata precludes a party from relitigating claims that were or could have been asserted in a prior action. For the doctrine of res judicata to apply, three factors must be present: (1) a final judgment on the merits in a prior action involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. *See, e.g., CoreStates Bank, N.A. v. Huls America, Inc.,* 176 F.3d 187, 194 (3d Cir.1999); *In re Mariner Post–Acute Network, Inc.,* 267 B.R. 46, 52 (Bankr.D.Del.2001).

As stated above, "court approval [is] a prerequisite to a debtor's assumption of an executory contract.... It cannot be presumed." *University Medical Center,* 973 F.2d at 1077. The Sale Order does not provide that the MATIS contracts were assumed and assigned. No final judgment with respect to the MATIS contracts could occur until the Sale Order's approval of the APA. Since the MATIS contracts were not assumed under that Order, res judicata actually prevents MATIS from making its claim.

Similarly the doctrine of law of the case bars MATIS from claiming its contracts were assumed. The law of the case doctrine provides that "once an issue has been decided, parties may not relitigate that issue in the same case." *Ogbudimkpa v. Ashcroft,* 342 F.3d 207, 210 n. 7 (3d Cir.2003) (citation omitted). Because the Sale Order and APA provided that the MATIS contracts were not assumed and assigned, the law of the case doctrine prevents MATIS from relitigating the assumption issue.

### IV.  CONCLUSION

For the reasons stated above, we conclude that the Motion for Summary Judgment filed by MATIS must be denied and that the cross-motion filed by Shaw must be granted.

An appropriate order is attached.

### ORDER

AND NOW this **14th** day of **April, 2005,** upon consideration of MATIS' Motion for Summary Judgment and Shaw's Cross Motion for Summary Judgment and for the reasons set forth in the accompanying memorandum opinion, it is hereby

**ORDERED** that MATIS' Motion for Summary Judgment is **DENIED;** and it is further

**ORDERED** that Shaw's Cross Motion for Summary Judgment is **GRANTED.**