In re BIG WHEEL HOLDING
COMPANY, INC., et al.,
Debtors.

BIG WHEEL HOLDING COMPANY,
INC., et al., Plaintiffs,

v.

FEDERAL WHOLESALE CO.
EAST, Defendant.

BIG WHEEL HOLDING COMPANY,
INC., et al., Plaintiffs,

v.

FEDERAL WHOLESALE
CO., Defendant.

Bankruptcy No. 93–796.
Adversary Nos. A–95–66, A–95–67.

United States Bankruptcy Court,
D. Delaware.

May 29, 1998.

**670**

Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, for Plaintiffs.

Jeremy Gilman, Stephen V. Cheatman, Laura C. Meagher, Benesch, Friedlander, Coplan & Aronoff, LLP, James W. Owen, Wilmington, DE, for Defendants.

M. BRUCE McCULLOUGH, Bankruptcy Judge.

This is the Court's decision on dispositive motions in each of two related adversaries proceedings, A95–66 and A95–67. Each adversary is a preference action brought by the Official Post–Confirmation Committee of Unsecured Creditors of Big Wheel (the "Committee") and against Federal Wholesale Co. East ("Federal East") for $626,215.84 in A95–66, and against Federal Wholesale Co. for $287,162.25 in A95–67. In each action, the Committee has moved for partial summary judgment, and the respective defendant has moved for summary judgment. The central question these motions raise is whether a creditor can assert the ordinary course affirmative defense contained within the preference statute of the Bankruptcy Code with respect to transfers made after that creditor sends a reclamation notice and terminates shipments of goods to a Debtor. These are core matters. 28 U.S.C. § 157(b)(2)(F).

I. *Legal Standard*

In each of these adversaries, the record consists of undisputed facts, admissions in the pleadings, exhibits attached to the briefing, and affidavits. The Court will consider the issues in the context of each defendant's motion for summary judgment. In considering those motions, the Court will view the

record and the inferences therefrom in the light most favorable to the non-movant Committee. Fed. R. Bankr.P. 7056(c). If this record shows no genuine issue as to any material fact, and that the respective defendant is entitled to judgment as a matter of law, then summary judgment shall be granted. *Hon v. Stroh Brewery Co.*, 835 F.2d 510, 512 (3d Cir.1987). Where the movant has produced evidence in support of summary judgment, the Committee may not rest on the allegations set forth in its pleadings, but must counter with evidence that demonstrates a genuine issue of fact. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). The Court agrees with the parties that the material facts here are undisputed, and that the dispositive legal issues raised are ripe for Court decision. The following facts are appropriate to consider.

## II. *Facts*

Prepetition, the Debtor operated a chain of discount department stores in the Northeastern United States. Commencing in 1992, and through April 1994, the defendant Federal East has operated as a wholesale distributor of consumer merchandise to retailers. The defendant Federal Wholesale is in the same business as Federal East, and has been in existence since 1980. The Debtor was a customer of both Federal Wholesale and Federal East, and the Debtor had conducted business with each entity for more than one year prepetition.

### A. *Facts Concerning Federal East*

The remainder of the discussion of the facts and law in the action against Federal Wholesale is contained in section IV. below. With respect to Federal East, the Debtor ordinarily purchased goods on 30 day terms. The Debtor's practice was to pay multiple invoices owed to Federal East with one payment. During the 90 days prior to its petition, the Debtor made 12 payments to Federal East ranging from $22,000 to $78,000, and according to the complaint, totaling $626,215.84. The payments were made during the time period April 14, 1993 through June 30,

1993. Each payment satisfied the obligation for numerous previously submitted invoices from Federal East to the Debtor. The 12 payments paid a total of 1338 invoices. The Committee concedes that the timeliness of payments made to Federal East during the 90 days prior to the filing of Debtor's petition for relief was generally consistent with the Debtor's past payment practices. There were no intensified or heightened collection activities by Federal East during the 90 days preceding the bankruptcy filings.

On June 11, 1993, Federal East served a letter notice of reclamation on Albert Agostinelli, chief financial officer for the Debtor pursuant to section 2–702 of the Uniform Commercial Code. The letter, dated June 11, demanded the return of all goods delivered to the Debtor within the last 10 days. The letter did not demand any payments. Federal East stopped shipping goods to the Debtor on June 11.

The last three payments from the Debtor to Federal East occurred after June 11 ($44,215.11 on June 15, $78,030.98 on June 23, and $51,943.15 on June 30) and totaled $174,189.24. There is no evidence that the Debtor paid these invoices because of the reclamation notice of Federal East. The Debtor and related Big Wheel companies filed their Chapter 11 petitions on July 8, 1993.

The Committee's complaint against Federal East alleges these circumstances, and seeks to avoid the 12 prepetition transfers during the 90 days prior to its petition in a total amount of $626,215.84. The answer of Federal East challenges the Committee's *prima facie* case, and raises three affirmative defenses: 11 U.S.C. § 547(c)(1) (contemporaneous exchange for new value), § 547(c)(2) (ordinary course of business), and § 547(c)(4) (new value).

The Committee has moved for summary judgment for $173,558.24, which is the sum of the last three transfers ($44,215.11, $78,030.98, and $51,943.15) minus $631.00 in conceded new value. As to the remainder of the transfers, the Committee's position is not clear. At best, it believes that there are disputed issues of fact in connection with the affirmative defenses. As the discussion below will show, however, there are no issues of

material fact that prevent this Court from ruling upon the legal issues.

Federal East has moved for summary judgment as to all 12 transfers and the entire $626,215.84 amount claimed by the Committee in the complaint. Federal East argues it is entitled to judgment on the *prima facie* case of the Committee, and on its affirmative defenses under subsections 547(c)(2) and 547(c)(4).

### III. *Discussion of Federal East's Summary Judgment Motion in A95–66*

#### A. *The Motion to Strike*

■ The Committee has attached two affidavits in support of its motion for partial summary judgment and in opposition to the summary judgment motion of Federal East. Both affidavits were created after the close of discovery. Federal East moves to strike each affidavit.

The first affidavit is that of Albert Agostinelli. According to his affidavit, during the relevant time period, he was chief financial officer of the Debtor and supervised the accounts payable operations. In the 11 paragraphs of the affidavit, Agostinelli testifies to certain background information, and to certain practices of the Debtor, in general and with respect to Federal East. In its answering brief to the Committee's summary judgment motion, Federal East has moved to strike this affidavit, for two reasons: (1) that the affidavit does not provide sufficient foundation for it to be admissible pursuant to Rule 56(e); and (2) that the conclusory testimony contained in the affidavit is contradicted by much more specific deposition testimony of Agostinelli (attached to the motion papers of Federal East).

According to this deposition testimony, Agostinelli had no personal knowledge of the challenged transfers, or the credit terms that existed between the parties. In its reply brief, the Committee's only response to the motion to strike is that during the deposition Agostinelli was intentionally denied access to the relevant documents. This conclusory and unsupported allegation will not be given any weight. Agostinelli's deposition testimony was very clear that he was not involved in payment terms with Federal East. Rather, the Debtor's buyers, merchandise managers, and two vice-presidents of merchandise were involved in the credit terms. Deposition of Albert Agostinelli, docket no. 29, tab 2, pages 49–52. Upon review of the affidavit and the deposition testimony brought to the Court's attention by Federal East, the background testimony of Agostinelli survives the motion to strike of Federal East. However, paragraphs 10 and 11 of the affidavit contradict Agostinelli's deposition testimony and are stricken. *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 705–06 (3d Cir. 1988).

Federal East has also moved to strike the affidavit of Richard Jones, controller of Fishers Big Wheel. In his affidavit, Jones states he personally reviewed the Debtor's records of payments made and shipments received during the relevant time period, and testifies as to payments made to Federal East, and other details. Upon review of the affidavit and the deposition testimony brought to the Court's attention by Federal East, paragraphs 2, 3, 6, 7 of the affidavit contradict Jones' deposition testimony and are stricken. The language of paragraph 8 that states "and involved in responding to" contradicts his deposition testimony, and is stricken.[1]

■ Jones prepared a report of payments made to, and shipments received from Federal East. Jones admitted at his deposition that the report, attached to his affidavit as Exhibit A, was prepared in anticipation of filing the adversary proceeding. Thus, the report is not a business record. The report is stricken.

#### B. *The Prima Facie Case has Been Proved.*

The first two elements of the Committee's *prima facie* case are stated in section 547(b):

**11 U.S.C. § 547 Preferences**

(b) Except as provided in subsection (c) of this section, the trustee may avoid any

---

1. In his deposition. Jones testified that he was not involved in responding to the reclamation demand of Federal East, other than to pass it on to legal counsel in New York, who then dealt with the demand. Deposition of Richard L. Jones, docket no. 29, tab 3, pages 83–85.

transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

To satisfy its burden on the elements of section 547(b), the Committee relies upon the Jones' affidavit, portions of which have been stricken. The portion of Jones' affidavit that remains does not prove the 12 transfers were made. The Committee also refers to checks and check registers, however, these documents were not attached to the Committee's papers. If the affidavit of Jones were the only evidence germane to the Committee's *prima facie* case, Federal East would be correct that the Committee has not met its burden on the elements of section 547(b).

Fortunately for the Committee, however, Federal East's own Rule 7056 evidence supplies the testimony needed to meet the Debtor's burden on these elements. The affidavit of Robert Greenwald, C.P.A., J.D., C.F.E., contains a detailed report of transfers between the Debtor and Federal East, and includes the three transfers at issue, and corresponding invoices. For each transfer, the invoice date precedes the transfer date. The Committee has proved a *prima facie* case, except that the total of the transfers within the 90 day preference period is only $625,585.92 (the Committee's complaint alleged the total of the transfers was $626,215.84).

## C. *Federal East has Proved the Affirmative Defense of Ordinary Course Payments.*

■ In this summary judgment motion, Federal East argues two of the affirmative defenses it raised in its answer entitle it to judgment as a matter of law. Only the affirmative defense pursuant to section 547(c)(2) need be considered. That subsection states:

(c) The trustee may not avoid under this section a transfer—

* * *

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of · the debtor and the transferee; and

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

Federal East asserts this defense as to each of the 12 transfers. The Committee concedes section 547(c)(2)(A) is satisfied; but argues section 547(c)(2)(B) and section 547(c)(2)(C) are not satisfied.

In support of its burden to prove the section 547(c)(2) defense, Federal East has presented the affidavits of Thomas P. Bianco, Richard F. Henry, and Robert M. Greenwald. Greenwald is an accountant. He analyzed the payment patterns from the Debtor to Federal East during the time period January 1, 1993 through April 8, 1993, and during the time period April 9, 1992 through July 8, 1993. With respect to this last time period, Greenwald found that $569,088.22 of the transfers paid the invoices of Federal East within the range of 30 to 45 days from the date of invoice. For $56,497.70 of the transfers, the delay was longer. The longest payment delay of the 1338 invoices paid by the 12 relevant transfers was 133 days. Report of Greenwald, docket no. 29, tab 5.

Thomas P. Bianco was and is president and chief executive officer of Federal East. According to Bianco, the credit terms between the parties remained consistent throughout the business relationship. Bianco explained that longer payment delays of the type present here do occur, and are caused when the invoice was misplaced or misdelivered, or where there was a billing question that the parties were attempting to resolve. Usually, when such a late payment is tendered, it is remitted as part of a larger payment encompassing numerous other invoices. This practice occurred with the Debtor throughout the relationship with Federal East, and has occurred with other customers of Federal East. Affidavit of Bianco, docket no. 29, tab 1, page 2–4.

Richard F. Henry is the executive vice-president and chief financial officer of Pro-

fessional Housewares Distributors. He testified as to the practices in the wholesale consumer merchandising business involving sales to large discount retail stores industry. In his view, when an invoice is stated due "net 30 days" it is and was in 1993 considered ordinary and normal for those invoices to be actually paid 30–50 days from invoice date. He also opined that further delays were common and not unusual when invoices were lost or missing, or when intermediaries were involved. Affidavit of Henry, docket no. 29, tab 6, page 2–3.

■ With respect to subsection 547(c)(2)(B), lateness of payment does not preclude a finding that the payment was made in the ordinary course, and indeed a pattern of late payments can establish an ordinary course between the parties. *E.g., In re Parkline Corporation,* 185 B.R. 164, 169 (Bankr.D.N.J.1994). The unrebutted testimony in this proceeding establishes that the late payments were the ordinary course of business between the parties. Indeed, the Committee "concedes that the timeliness of payments made to Defendant during the 90 days prior to the filing of Debtor's petition for relief was generally consistent with past practices." Answering Brief, Docket no. 36 at 2. *See also In re Rave Communications, Inc.,* 128 B.R. 369 (Bankr.S.D.N.Y.1991) (where invoice stated "net 30 days," payments made from 55 to 146 days past invoice date held within ordinary course of business).

■ With respect to subsection 547(c)(2)(C), ordinary business terms refers to the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so unusual as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C. *In re Molded Acoustical Products, Inc.,* 18 F.3d 217 (3d Cir.1994) (citing *In re Tolona Pizza Products Corp.,* 3 F.3d 1029 (7th Cir.1993)) (discussing the meaning of the phrase "ordinary business terms" as used in subsection 547(c)(2)(C)). The Committee does not argue that the terms of the transfers in and of themselves were in some way so unusual as to fail the

standard of the *Molded Acoustical Products* case.

Indeed, as to the nine transfers made before June 11, the Committee has presented no argument as to why judgment should not be entered in favor of Federal East upon its affirmative defense of section 547(c)(2).

In reference to the three transfers made after June 11, the Committee's sole argument that Federal East has not satisfied section 547(c)(2)(B) and section 547(c)(2)(C) focuses upon the fact that Federal East served a reclamation notice and stopped all shipments of goods at that time. The Committee argues that this conduct qualifies as a dramatic and radical change from the past course of dealing of the Debtor and Federal East, and that therefore, Federal East departed from the ordinary course of business. The Committee latches onto language of the Third Circuit Court of Appeals in the *Molded Acoustical Products* case that "the ordinary course exception to the preference rule is formulated to induce creditors to continue dealing with a distressed Debtor so as to kindle its chances of survival without a costly detour through ... bankruptcy." 18 F.3d at 219. Because Federal East did not continue to deal with the Debtor, the Committee concludes that the purpose of the ordinary course exception is not satisfied and that the affirmative defense of section 547(c)(2) should not be available as a matter of law.

■ The problem with this argument is that it relies upon a stated purpose of a statutory section taken out of context, and not the language of the section. The quote from the *Molded Acoustical Products* case was in the context of a general discussion by the Third Circuit Court of Appeals of the competing policies of the preference statute, and in an attempt to give subsection 547(c)(2)(C) meaning independent from that of subsection 547(c)(2)(B). The *Molded Acoustical Products* case does not require Federal East to continue to do business with the Debtor after receiving ordinary course payments from the Debtor to avail itself of the affirmative defense of section 547(c)(2). The Committee has not cited any other case law that supports its legal theory. That theory would effectively engraft a fourth and

conjunctive requirement onto section 547(c)(2), that the ordinary course exception to the preference rule is available only where the creditor "continues dealing with a distressed Debtor so as to kindle its chances of survival without a costly detour through bankruptcy." The Court declines to create such a requirement.

This Court's role is to rule upon whether the requirements of section 547(c)(2) has been satisfied on the basis of the statutory language and upon relevant case law interpreting that language. Federal East has presented evidence in this summary judgment motion that satisfies the language of section 547(c)(2). The Court holds as a matter of law that all 12 transfers were made in the ordinary course of business of the Debtor and Federal East within the meaning of section 547(c)(2)(B); and that the transfers were made according to ordinary business terms within the meaning of section 547(c)(2)(C).

## IV. *Federal Wholesale Proceeding, A95–67*

### A. *Facts Concerning Federal Wholesale*

With respect to Federal Wholesale, the material facts are almost identical. The Debtor ordinarily purchased goods from Federal Wholesale on 30 day terms. During the 90 days prior to its petition, the Debtor made 13 payments to Federal Wholesale ranging from $7,000 to $185,000. Each payment satisfied the obligation for numerous previously submitted invoices from Federal Wholesale to the Debtor (a total of 2337 invoices). The Committee concedes that the timeliness of payments made to Federal Wholesale during the 90 days prior to the filing of Debtor's petition for relief was generally consistent with past practices.

On June 11, 1993, Federal Wholesale served a letter notice of reclamation on Agostinelli. The letter, dated June 11, demanded the return of all goods delivered to the Debtor within the last 10 days. The letter did not demand any payments. Federal Wholesale stopped shipping goods to the Debtor on June 11.

The last four payments from the Debtor to Federal Wholesale totaled $287,162.25—checks were issued for $152,024.94 on June 9,

for $78,518.70 on June 9, for $50,015.65 on June 11, and for $7,090.03 on June 18. There is no evidence that the Debtor paid these invoices because of the conduct of Federal Wholesale, and indeed, two of these payments were issued before the reclamation notice was received by the Debtor.

The Committee's complaint against Federal Wholesale alleges these circumstances, and seeks to avoid the 13 prepetition transfers in a total amount of $1,085,163.81. The answer of Federal Wholesale challenges the Committee's *prima facie* case, and raises the same three affirmative defenses Federal East raised.

The Committee has moved for summary judgment for $287,162.25, which is the sum of the last four transfers ($50,015.65, $7,090.03, $152,024.94, $78,518.70), minus $487.07 in conceded new value. As to the remainder of the transfers, the Committee's position is not clear. At best, it believes that there are disputed issues of fact in connection with the affirmative defenses. Once again, however, there are no issues of material fact that prevent this Court from ruling upon the legal issues.

Federal Wholesale has moved for summary judgment as to all 13 transfers and the entire $1,085,163.81 amount claimed by the Committee in the complaint. Federal Wholesale argues it is entitled to judgment on the *prima facie* case of the Committee, and on its affirmative defenses under subsections 547(c)(2) and 547(c)(4).

### B. *Discussion*

■ The Committee has attached affidavits of Agostinelli and Jones in support of its motion and in opposition to the motion of Federal Wholesale. The contents of these affidavits are almost identical to the affidavits in the other adversary proceeding. Federal Wholesale moves to strike these affidavits.

The analysis and result is the same as discussed in section III.A. of this letter opinion. Paragraphs 10 and 11 of Agostinelli's affidavit are stricken. Paragraphs 2, 3, 6, 7 of Jones' affidavit are stricken. The language of Jones' affidavit of paragraph 8 that

states "and involved in responding to" is stricken. Exhibit A attached to the affidavit of Jones is stricken. However, as in the other adversary proceeding, the Committee has proved a *prima facie* case, except that the total of the transfers within the 90 day preference period is only $1,047,576.18 (the Committee's complaint alleged the total of the transfers was $1,085,163.81).

With respect to the affirmative defense of section 547(c)(2)(B), the Committee asserts in its opening brief that the Debtor's normal payment procedure was to automatically issue checks, and that it deviated from this procedure when it issued two manual checks for $152,024.94 and $78,518.70, both dated June 9 and payable to Federal Wholesale. The portion of the affidavits providing the basis for these factual assertions have been stricken. Moreover, even if the Court had not struck those portions of the affidavits, the Committee's argument with respect to section 547(c)(2)(B) would fail. The payments issued before the reclamation notice.[2] Only two of the four challenged payments were alleged to have been issued manually. Finally, the Committee has not cited any case law that holds a payment was not made in the ordinary course of business of the Debtor solely because a check was issued manually rather than automatically.

The Committee concedes that the timeliness of payments made to Defendant during the 90 days prior to the filing of Debtor's petition for relief was generally consistent with past practices. Answering Brief, docket no. 37 at 2. Nonetheless, the Committee argues that Federal Wholesale has not satisfied section 547(c)(2)(B) and section 547(c)(2)(C) because of the fact that Federal Wholesale served a reclamation notice and stopped all shipments of goods at that time. This argument has already been held to be without merit. The Court holds as a matter of law that the transfers were made in the ordinary course of business of the Debtor and Federal Wholesale within the meaning of section 547(c)(2)(B); and that the transfers were made according to ordinary business

terms within the meaning of section 547(c)(2)(C).

V. *Conclusion*

Two separate orders are attached in accordance with this letter opinion.

### ORDER
#### Adversary No. A–95–66

For the reasons stated in the attached letter opinion,

1. Federal East's motion to strike is **GRANTED** with respect to:

   a. Paragraphs 10 and 11 of the affidavit of Albert Agostinelli.

   b. Paragraphs 2, 3, 6, 7 of the affidavit of Richard Jones, and with respect to the language of paragraph 8 that states "and involved in responding to."

   c. Exhibit A attached to the affidavit of Jones.

2. The motion for summary judgment of the defendant Federal Wholesale East is **GRANTED**. The complaint is **DISMISSED**.

### ORDER
#### Adversary No. A–95–67

For the reasons stated in the attached letter opinion,

1. Federal Wholesale's motion to strike is **GRANTED** with respect to:

   a. Paragraphs 10 and 11 of the affidavit of Albert Agostinelli.

   b. Paragraphs 2, 3, 6, 7 of the affidavit of Richard Jones, and with respect to the language of paragraph 8 that states "and involved in responding to."

   c. Exhibit A attached to the affidavit of Jones.

---

**2.** In this regard, the Committee's reliance on *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) is misplaced.

2. The motion for summary judgment of the defendant Federal Wholesale is **GRANTED**. The complaint is **DISMISSED**.