**In re U.S. WIRELESS CORPORATION, INC., Wireless Location Technologies, Inc., and Wireless Location Services, Inc., Debtors.**

**The Liquidating Trust of U.S. Wireless Corporation, Inc., Wireless Location Technologies, Inc., and Wireless Location Services, Inc., Plaintiff,**

v.

**David Huffman, Defendant.**

Bankruptcy Nos. 01–10262 (CSS), 01–10263(CSS), 01–10264(CSS).
Adversary No. 03–55657 (CSS).

United States Bankruptcy Court, D. Delaware.

May 6, 2008.

Klehr, Harrison, Harvey, Branzburg & Ellers LLP, Joanne B. Wills, Christopher A. Ward, Wilmington, DE, for the Liquidating Trust of U.S. Wireless Corp., et al.

Margolis Edelstein, Herbert W. Mondros, Lucian Murley, Wilmington, DE, for David Huffman.

## OPINION[1]

CHRISTOPHER S. SONTCHI, Bankruptcy Judge.

### *INTRODUCTION*

Before the Court is an action to avoid and to recover transfers made by the Debtors on behalf of David Huffman, a former employee of the Debtors. The Liquidating Trust initiated this adversary proceeding to recover approximately $330,000 in taxes paid by the Debtors on behalf of Mr. Huffman on the grounds that: (i) the payment of taxes on Mr. Huffman's behalf was a fraudulent transfer under the Bankruptcy Code and California law; (ii) Mr. Huffman's failure to reimburse the Debtors was a breach of contract; and (iii) Mr. Huffman was unjustly enriched. The parties have filed cross motions for summary judgment. For the reasons set forth below, there is a genuine issue of material fact as to whether the Debtors actually paid taxes on behalf of Mr. Huffman, which precludes the entry of summary judgment.

### *JURISDICTION*

This Court has subject matter jurisdiction under 28 U.S.C. § 1334(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

### *PROCEDURAL AND FACTUAL BACKGROUND*

On August 29, 2001 ("Petition Date"), U.S. Wireless Company ("U.S.Wireless") and two of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Under the confirmed plan in these cases, the assets and liabilities of the Debtors were consolidated and transferred to the Liquidating Trust of U.S. Wireless Corporation, Inc., Wireless Location Technologies, Inc., and Wireless Location Services, Inc. (the "Liquidating Trust" or "Plaintiff"). Executive Sounding Board Associates Inc. was appointed as Liquidating Agent ("Liquidating Agent") for the Liquidating Trust and given the power to object to, liquidate, classify and satisfy all claims against the Debtors' estates and to

---

1. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

prosecute all causes of action on behalf of the Debtors' estates.

Mr. Huffman is a former employee of a subsidiary of the Debtors. Prior to the Petition Date, the Debtors entered into incentive agreements with various employees under which the employees could acquire equity in the Debtors as additional compensation. Mr. Huffman entered into such an agreement (the "Incentive Agreement") with the Debtors under which he was given stock options and restricted shares.

In 1999, Huffman exercised 66,667 of his stock options and received $25,000 in shares, which caused him to earn $925,691.20 in additional compensation, triggering additional aggregate tax obligations of $334,778.64 (the "Additional Taxes").[2] Mr. Huffman did not pay the Additional Taxes, notwithstanding that he was responsible for the payment under the terms of the Incentive Agreement.

The Internal Revenue Code ("IRC") requires that each employer establish a special "941 account" to hold payments made by employers to satisfy employees' withholding obligations.[3] The amounts paid into a "941 account" must be regularly reported to the IRS, which are then harmonized with each employee's W–2.

Initially, the Debtors failed to include extra earnings caused by the exercise of stock options on the employees' W–2 forms. Following an audit, however, the Debtors were advised to file an amended IRS Form 941 (Support Statement to Correct Information) and to set aside the additional withholding taxes in a 941 account. On the eve of the Petition Date, the Debtors transferred a lump sum of $1,453,055.41 to a 941 bank account to reflect the adjusted necessary tax obli-

gations owed to the IRS on behalf of numerous key employees. Included on the Debtors' submitted list of the key employees was Mr. Huffman.

Shortly thereafter, in November, 2001, the Debtors sent a letter to Mr. Huffman notifying him that he was ultimately responsible for the full tax obligations arising from his exercise of stock options, regardless of the Debtors' previous failure to report the extra income on Mr. Huffman's 1999 W–2 form.

In December, 2001, the IRS notified the Debtors that the Debtors had overpaid $652,228.14 into the Debtors' 941 account. Subsequently, the Debtors requested that this overpaid amount be applied to satisfy the additional withholding tax obligations resulting from the amended W–2s and 941 forms related to the exercise of stock option, among the subject of which was Mr. Huffman.

In August, 2003, the Liquidating Trust commenced this action against Mr. Huffman through which it seeks to avoid and recover $334,778.64 made as fraudulent transfers made to and/or on behalf of Mr. Huffman. Following a protracted series of procedural delays, in October, 2007, Mr. Huffman filed a Motion for Summary Judgment. In response, the Liquidating Trust filed its Cross–Motion for Summary Judgment. Briefing is complete and this matter is ready for disposition.

### LEGAL DISCUSSION

#### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, directs

---

**2.** More specifically, the Additional Withholding Taxes consist of $260,867.94 in federal income tax, $4,501.20 for social security,

$13,509.23 for Medicare, and $55,900.27 in California income tax.

**3.** IRC § 941.

that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." [4]

Summary judgment is designed "to avoid trial or extensive discovery if facts are settled and dispute turns on issue of law." [5] Its purpose is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." [6] Furthermore, summary judgment's operative goal is "to isolate and dispose of factually unsupported claims or defenses" [7] in order to avert "full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." [8]

When requesting summary judgment, the moving party must "put the ball in play, averring an absence of evidence to support the nonmoving party's case." [9] In order to continue, the burden shifts to the nonmovant to identify "some factual disagreement sufficient to deflect brevis disposition." [10] Not every discrepancy in the proof, however, is enough to forestall a properly supported motion for summary judgment; the "disagreement must relate to some genuine issue of material fact." [11] In other words, the summary judgment standard "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." [12]

In order to demonstrate the existence of a genuine issue of material fact in a jury trial, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant. [13] The same principles apply in a bench trial where the judge is the ultimate trier of fact; the nonmovant must obviate an adequate showing to the judge to find for the nonmovant. [14] At the summary judgment stage, the court does not "weigh the evi-

---

**4.** Fed.R.Civ.P. 56.

**5.** 11–56 MOORE'S FEDERAL PRACTICE, § 56.02 (Matthew Bender 3d ed.).

**6.** *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)).

**7.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**8.** *Mesnick*, 950 F.2d at 822.

**9.** *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548.

**10.** *Mesnick*, 950 F.2d at 822.

**11.** *Id.*

**12.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**13.** *United States v. Jamas Day Care Ctr. Corp.*, 152 Fed.Appx. 171, 173 (3d Cir.2005) *(quoting Olson v. GE Astrospace*, 101 F.3d 947, 950 (3d Cir.1996) *(citing Coolspring Stone Supply, Inc. v. American States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir.1993)))*. See also Mesnick*, 950 F.2d at 822. ("... 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law").

**14.** *Leonard v. General Motors Corp. (In re Headquarters Dodge)*, 13 F.3d 674, 679 (3d Cir.1993) ("A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable factfinder [sic] could return a verdict in favor of the nonmovant."). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial").

dence and determine the truth of the matter;" rather, the court determines "whether there is a genuine issue for trial."[15] A material fact is one which "could alter the outcome" of the case. It is genuine when it is "triable," that is, when reasonable minds could disagree on the result.[16] Importantly, all reasonable inferences must be drawn in favor of the nonmoving party[17] and any doubt must be read in favor of the nonmovant.[18]

The requirement that the movant supply sufficient evidence carries a significant corollary: the burden of proof is switched to the non-movant who "must present definite, competent evidence to rebut the motion."[19] Such evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial."[20] Furthermore, evidence that "is merely colorable or is not significantly probative" cannot deter summary judgment.[21] In response, "the non-moving party must adduce more than a mere scintilla of evidence in its favor;"[22] it cannot simply reassert factually unsupported allegations contained in its pleadings.[23] In other words, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[24] Conversely, in a situation where there is a complete failure of proof concerning an essential element of the nonmoving party's case, Rule 56(c) necessarily renders all other facts immaterial and mandates a ruling in favor of the moving party.[25]

■ Finally, the standards under which to grant or deny summary judgment do not change because cross-motions are filed.[26] Each party still bears the initial burden of establishing a lack of genuine issues of material fact. When faced with cross-motions for summary judgment, the court must consider each motion independently.[27] Moreover, although it maybe implied from the filing of a cross-motion that

---

15. *Argus Mgmt. Group v. GAB Robins, Inc. (In re CVEO Corp.)*, 327 B.R. 210, 214 (Bankr. D.Del.2005) *(quoting Anderson, 477 U.S. at 249, 106 S.Ct. 2505)*.

16. *Id.* at 210 (*citing Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 301 (3d Cir.1995)).

17. *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir.2004) (*citing Suders v. Easton*, 325 F.3d 432, 435 n. 2 (3d Cir. 2003)). *See also Interim Investors Comm. v. Jacoby*, 90 B.R. 777, 780 (W.D.N.C.1988), *aff'd*, 914 F.2d 1491 (4th Cir.1990); *In re Holzinger*, 89 B.R. 529, 530 (Bankr.E.D.Pa. 1988); and *In re Pashi*, 88 B.R. 456, 457 (Bankr.N.D.Ga.1988).

18. *In re Cantin*, 114 B.R. 339, 341 (Bankr. D.Mass.1990); and *In re Dempster*, 59 B.R. 453, 455 (Bankr.M.D.Ga.1984).

19. *Id.* See also *Mesnick*, 950 F.2d at 822.

20. *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989).

21. *Id.* See also *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

22. *Id.* See also *In re CVEO Corp.*, 327 B.R. at 213.

23. See, e.g., *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

24. *PTC v. Robert Wholey & Co. (In re Fleming Cos.)*, 2006 Bankr.LEXIS 896 at *3 (Bankr. D.Del.2006) (*citing Matsushita Elec. Indus. Co.*, 106 S.Ct. at 1356).

25. *Celotex Corp.*, 477 U.S. at 317, 106 S.Ct. 2548.

26. *Williams v. Philadelphia Hous. Auth.*, 834 F.Supp. 794, 797 (E.D.Pa.1993).

27. *Panhandle Eastern Pipe Line Co. v. Utilicorp United*, 928 F.Supp. 466, 470 (D.Del. 1996).

the parties agree that no material issues of fact exist, "the court is not bound by this implicit agreement and is not required to enter a judgment for either party." [28]

## II. Mr. Huffman's Motion for Summary Judgment Must Be Denied

■ Mr. Huffman argues that summary judgment should be entered in his favor because there is no proof that the Debtors paid the Additional Taxes on his behalf. Mr. Huffman refers to the issue of whether the Debtors paid the Additional Taxes on his behalf as the "lynchpin" of this adversary proceeding. He further argues that the Liquidating Trust can, at best, establish that a) Mr. Huffman was one of the many employees of the Debtors that received restricted stock or stock options; and b) the Debtors transferred a bulk amount of money to the IRS. Mr. Huffman's argument relies on the proposition that since an essential element of the Liquidating Trust's case in chief is missing, summary judgment must be entered on Mr. Huffman's behalf. He further argues that the documents upon which the Liquidating Trust attempts to rely to meet that burden are inadmissible hearsay.

Huffman's argument fails because there is a genuine issue of fact which needs to be resolved, namely, whether the Liquidating Trust, in fact, paid the Additional Taxes on Huffman's behalf. The Liquidating Trust has produced sufficient evidence to signal the Additional Taxes *may* have been paid by the Liquidating Trust on behalf of Mr. Huffman. The documents produced in dis-covery and in response to Mr. Huffman's motion demonstrate that the nominal burden at the summary judgment stage has been met by the Liquidating Trust. The documents list Mr. Huffman among the individuals who exercised stock options and, at least by inference, that the sum of money paid to the IRS may have included payment on behalf of Mr. Huffman. It is important to note that the ultimate factual issue is not before the Court at this point. As long as there remains a factual doubt, such doubt must be read in favor of the Liquidating Trust. Thus, the Court duly gives credence to the Liquidating Trust's documentary proffer. Since Mr. Huffman has not shown a complete lack of proof, the case does not rest solely on a determination of a legal issue; therefore, Huffman's motion for summary judgment must be denied.

## III. The Liquidating Trust's Motion for Summary Judgment Must Be Denied

In response to Mr. Huffman's motion, the Liquidating Trust rebuts that Mr. Huffman "merely attempts to create the illusion that there are factual issues in dispute via *ipse dixit* assertions" [29] and that "Huffman cannot even submit a 'mere scintilla of evidence' supporting his position." [30] In contrast, the Liquidating Trust argues that it has produced "irrefutable" evidence that the Debtors paid the Additional Taxes on Mr. Huffman's behalf. Furthermore, relying on *Orson, Inc. v. Miramax Film Corp.*,[31] the Liquidating

---

**28.** *WorldCom, Inc. v. GE Global Asset Mgmt. Servs. (In re WorldCom, Inc.)*, 339 B.R. 56, 62 (Bankr.S.D.N.Y.2006). *See also Enron Corp. v. Whalen (In re Enron Corp.)*, 351 B.R. 305, 310 (Bankr.S.D.N.Y.2006).

**29.** Plaintiff Liquidating Trust's Brief in Support of (I) Response to Defendant's Motion for Summary Judgment and (II) Cross Motion for Summary Judgment, p. 9 (Docket # 70).

**30.** *Id.*, p. 10.

**31.** *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1372 (3d Cir.1996) (Holding that oral argument and legal memoranda are not evidence and "cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion").

Trust argues that Mr. Huffman must proffer some evidence in support of his position, which he has not done; hence, summary judgment should be entered in favor of the Liquidating Trust.

The Liquidating Trust's arguments are not convincing. The evidence produced by the Liquidating Trust may be significant, but it is not irrefutable. In order to conclude that Huffman has, in fact, benefited from the Liquidating Trust's payment to the IRS, an inference would have to be drawn to link two fairly distinctive facts. Just because Huffman is on a list of people who exercised stock options that triggered additional tax obligations and the Liquidating Trust paid money to the IRS does not mean that a transfer has been made by the Debtors for Mr. Huffman's particular benefit. On the basis of the record before the Court at this stage, it would be inappropriate on a motion for summary judgment for the Court, in effect, to hypothesize that the Debtors paid the Additional Taxes on Mr. Huffman's behalf. The factual gap is too wide. Moreover, there is lack of specificity as to the exact amounts owed by Mr. Huffman to the IRS and paid by the Debtors into the special 941 account for each particular individual. It is vital to separate the alleged payment on Mr. Huffman's behalf from the payments on behalf of the many other individuals on the list. After all, documents indicate one bulk payment to the IRS and nothing that would otherwise unambiguously show that it was the specific objective of the Liquidating Trust to satisfy Mr. Huffman's particular tax obligation triggered by his exercise of stock options.

Additionally, the Liquidating Trust does not sufficiently credit Mr. Huffman's argument; Mr. Huffman has presented considerably more than a scintilla of evidence to support his position. His allegations are serious because unless the Liquidating Trust is able to prove all essential elements of the case, including the specific payment of the Additional Taxes on Mr. Huffman's behalf, the Liquidating Trust cannot prevail. Importantly, Mr. Huffman's proposition is duly entitled to the Court's credence on summary judgment and any doubts must be read in his favor. Therefore, genuine factual issues remain for the Court to determine at trial. For these reasons, summary judgment in the Liquidating Trust's favor is also improper.

### CONCLUSION

For the foregoing reasons, there is a genuine issue of material fact as to whether the Debtors actually paid taxes on behalf of Mr. Huffman, which precludes the entry of summary judgment on behalf of either party.

### ORDER

For the reasons set forth in the Court's opinion of this date, the Defendant's Motion for Summary Judgment [D.I. 67] and the Liquidating Trust's Cross Motion for Summary Judgment [D.I. 69] are DENIED.