In re The IT GROUP, INC.,
et al., Debtors.

IT Litigation Trust, successor in interest to The IT Group, Inc. and its affiliated debtors and the Official Committee of Unsecured Creditors of The IT Group, Inc., et al., Plaintiff,

v.

Alpha Analytical Labs, Arce Systems, Inc., Arrowhead Reclamation, B & M Lawn Service & Landscaping, Capital Protection Services, Inc., Clean Earth of Philadelphia, Florida ENV Compliance Corp., Hawaiian Cement, Imperial Lakes Realty, Keller Grassing, PNC Leasing, LLC, Portemus Engineering, Inc., Shandon Iron & Steel, Texana Machinery Corporation, Thomas G. Pagan, Transpo Group, Inc., Advanced Equipment Company, Inc., American Hauling, Inc., Atlantic Waste Disposal, Inc., Bellon Environmental Company, Carmeuse Lime, Civil Mechanical Contractor, ETI Services, Inc., Eurest Support Services, Innovative Waste Mgmt., Inc.,

598

Landtec, Pfifferling & Associates, RM Cat Environmental Services, RM Cat Environmental Services, Springfield Topsoil Corporation, Stark's Gravel Company, The Wells Group, LLC, Thornton and Company.

Bankruptcy No. 02–10118 (MFW).
Adversary Nos. A 04–50065(PBL), A 04–50026(PBL), A 04–50435(PBL), A 04–50038(PBL), A 04–50448(PBL), A 04–50070(PBL), A 04–50128(PBL), A 04–50561(PBL), A 04–50833(PBL), A 04–50669(PBL), A 04–51253(PBL), A 04–50143(PBL), A 04–50744(PBL), A 04–51027(PBL), A 04–50212(PBL), A 04–51175(PBL), A 04–50535(PBL), A 04–50423(PBL), A 04–50406(PBL), A 04–50025(PBL), A 04–50409(PBL), A 04–50557(PBL), A 04–50534(PBL), A 04–50491(PBL), A 04–50773(PBL), A 04–50235(PBL), A 04–50133(PBL), A 04–50747(PBL), A 04–50185(PBL), A 04–51035(PBL), A 04–50864(PBL), A 04–50204(PBL), A 04–51012(PBL).

United States Bankruptcy Court,
D. Delaware.

Oct. 14, 2005.

Victoria Watson Counihan, Greenberg Traurig, LLP, Jamie Lynne Edmonson, Landis Rath & Cobb LLP, Gregg M. Galardi, Marion M. Quirk, Gary Adam Rubin, Skadden Arps Slate Meagher & Flom LLP, Eric Michael Sutty, The Bayard Firm, Rachel Lowy Werkheiser, Pachulski, Stang, Ziehl, Young & Jones, John C. Phillips, Jr., Phillips, Goldman & Spence, Wilmington, DE, for Debtors.

Brian J. McLaughlin, Monzack and Monaco, P.A., John D. Demmy, Stevens & Lee, P.C., Wilmington, DE, for Defendant.

James S. Yoder, White and Williams LLP, Wilmington, DE, for B & M Lawn Service & Landscaping, Clean Earth of

Philadelphia, Hawaiian Cement, Texana Machinery Corporation, Transpo Group, Inc., Advanced Equipment Company, Inc., RM Cat Environmental Services.

## OPINION [1]

PAUL B. LINDSEY, Bankruptcy Judge.

### I. Background

Each of these adversary proceedings has been brought by the plaintiff, The IT Litigation Trust, successor to the IT Group, Inc. and its affiliated debtors and the Official Committee of Unsecured Creditors (hereafter referred to as "Plaintiff"), seeking to avoid and recover pursuant to §§ 547 and 550 of the Bankruptcy Code,[2] certain allegedly preferential transfers made by the debtors, The IT Group, Inc., *et al.* (hereafter referred to as "Debtors"), during the "Preference Period," the 90–day period prior to January 16, 2002, the day on which Debtors filed their voluntary petitions for relief under Chapter 11 of the Code. In each of these adversary proceedings, the defendant (hereafter referred to as "Defendant," and collectively as "Defendants"), has asserted a defense to the complaint based upon *Kimmelman v. Port Authority of New York and New Jersey (In re Kiwi International Air Lines, Inc.)*, 344 F.3d 311 (3d Cir.2003) (hereafter referred to as "*Kiwi*," and the "Kiwi Defense").

The Court held a hearing on April 14, 2005, at which the parties were given the opportunity to suggest procedures to assist the Court in narrowing or more precisely defining the issues in these proceedings, so that they could be prepared more efficiently for trial and/or resolved prior to trial. At the conclusion of that hearing, the Court established a briefing schedule for motions related to the Kiwi Defense. In order to accommodate the briefing schedule established by the Court, the trials of these cases, which had been previously scheduled for the month of June, were adjourned until further order of the Court. Plaintiff filed its Motion for Partial Summary Judgment with Respect to the Kiwi Defense, and a number of Defendants filed motions as well. Supporting briefs, responses and replies have been filed.[3] At this juncture, briefing appears to be complete on virtually all of these motions and they are ripe for determination by the Court on the narrow issue of the applicability of the Kiwi Defense.

As a matter of historical reference, it is noted that Debtors declined to bring these or other avoidance actions. The Official Committee of Unsecured Creditors sought permission to bring these actions, and permission was granted by Order dated November 11, 2003, after a hearing before Chief Judge Mary F. Walrath of this Court. At that hearing, counsel for the Committee was strongly admonished with regard to its duties and responsibilities under Federal Rule 11, and Bankruptcy Rule 9011.[4] Counsel at that time acknowl-

---

1. This Opinion will constitute the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Civil Procedure 52, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7052.

2. 11 U.S.C. §§ 101 *et seq.* References herein to statutory provisions by section number alone will be to the Bankruptcy Code unless the contrary is clearly stated.

3. Unfortunately, a significant number of Defendants' motions for summary judgment and responses to Plaintiff's Motion, contain assertions and allegations which, while in some

cases giving lip service to the Kiwi Defense, are far afield from the narrow scope anticipated and directed by the Court.

4. Federal Rule 11 and Bankruptcy Rule 9011 are virtually identical and provide for the imposition of sanctions on an attorney or an unrepresented party who files a pleading, motion, or other paper for an improper purpose, such as to harass, delay or increase the cost of litigation; asserts claims, defenses and other legal contentions which are frivolous or otherwise unwarranted; makes allegations and contentions without evidentiary support; or makes of factual contentions which are un-

edged those duties and responsibilities and assured the Court that compliance therewith would be under continuous review. Plaintiff thereafter filed more than 1,200 preference actions, including the above-captioned adversary proceedings, prior to the two-year anniversary of the filing of Debtors' petitions in bankruptcy.

## II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c), made applicable to these proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, all factual inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). After sufficient proof has been presented to support the motion, the burden shifts to the nonmoving party to show that genuine issues of material fact still exist and that summary judgment is not appropri-

ate. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. A genuine issue of material fact is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## III. Discussion

### A. Requirements for Avoidance of a Preference

■ A pre-petition transfer may be avoided if the requirements of § 547(b) are met. That section is as follows:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

warranted on the evidence, unless reasonably based on a lack of information or belief.

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). "Unless each and every one of these elements is proven, a transfer is not avoidable as a preference under 11 U.S.C. § 547(b)." *Waslow v. The Interpublic Group of Cos., Inc. (In re M Group, Inc.)*, 308 B.R. 697, 700 (Bankr. D.Del.2004) (citations omitted). *See also,* 11 U.S.C. § 547(g) (placing the burden of proof for these elements on the trustee/plaintiff).

## B. The *Kiwi* Opinion

In *In re Kiwi International Air Lines, Inc.*, the plaintiff, the trustee of an airline debtor, appealed the ruling of the Bankruptcy Court, and affirmed by the District Court, which held that assumption of a contract under § 365 barred a preference claim by a trustee under § 547 for payments made under the contract during the preference period.[5] The Court of Appeals held that the assumption of an unexpired lease or executory contract under § 365 bars the later avoidance of pre-petition transfers related to the assumed lease or contract, because assumption provides the other party to the assigned lease or contract with a "unique set of rights." *Kiwi,* 344 F.3d at 317. As the Court explained, the debtor must cure all defaults, assure future performance, and make the other contracting party whole before it may be permitted to assume the agreement. The Court quotes from *In re Columbia Gas System, Inc.* as follows: "[B]ecause assumption acts as a renewed acceptance of the terms of the executory bargain, the Bankruptcy Code provides that the cost of performing the debtor's obligations is an administrative expense of the estate, which will be paid first out of the assets of the estate." *Kiwi,* F.3d at 318 (quoting *In re Columbia Gas System, Inc.,* 50 F.3d 233, 238–239 (3d Cir.1995)). The Court then notes, that "[o]nce the debtor assumed the agreements, the defendants were no longer unsecured creditors because the defendants 'had more than a simple unsecured claim for a sum of money.'" *Kiwi,* 344 F.3d at 319 (quoting *In re LCO Enterprises,* 12 F.3d 938, 942 (9th Cir.1993)).

Thus, assumption effectively transforms the other contracting party from a general unsecured creditor to a priority administrative claimant, which in turn, precludes the trustee from satisfying the requirements of § 547(b)(5).

## C. The *MATIS* Opinion

In *In re The IT Group, Inc.,* 322 B.R. 729 (Bankr.D.Del.2005), (hereafter, *"MATIS"*), Chief Judge Walrath provided a historical and chronological perspective on the assumption and assignment process as it developed in this case:[6]

The Sale Motion filed on January 25, 2002, stated that the Debtors would designate the executory contracts that would be assumed and assigned as part of the asset sale. The Sale Motion explained that notice of the intended assumption/assignment and the cure amount to be paid would be provided to all parties with contracts that the Debtors intended to assume. It further advised that each contract party would have an opportunity to object to the assumption and assignment of its con-

---

**5.** The Court in *Kiwi* also held, as to one of the three defendant/appellees in the case, that a preference action was also barred by § 1110, which involves the right of a secured party holding a security interest to take possession of aircraft equipment and vessels. That pro-vision has no applicability to the adversary proceedings before the Court in this case.

**6.** The prospective purchaser of the assets was The Shaw Group, Inc. ("Shaw").

tract and the cure amount which the Debtors felt was due.

On January 8, 2002, Shaw filed the APA which stated that Shaw was buying "all interest of [the Debtors] in the Assumed Contracts." The APA contained an extensive definition section that contained the following pertinent definitions:

Assumed Contracts: "all Contracts of ·Sellers other than the Excluded Contracts and the Completed Contracts."

Completed Contracts: "Contracts of Sellers (including those listed on Schedule 2.02(b)) under which substantially all of the contractual work effort of Sellers has been completed, even if such Contracts have continuing warranty obligations, administrative matters or work related to warranty or other claims."

Excluded Contracts: "all Contracts other than Completed Contracts and Immaterial Contracts (I) which are designated as such on Schedule 5.15(b) (as amended or supplemented in accordance with this Agreement) or (ii) which are not listed on Schedule 3.17 [Assumed Contracts]."

However, Schedules 2.02(b), 3.17, and 5.15(b), referenced in the definitions, were not filed with the APA on January 28, 2002.

On March 7, 2002, we directed the Debtors to file a list of the contracts which the Debtors intended to assume and assign ("the List") and to provide notice to all the parties to the contracts listed thereon. The List was filed, and notice sent, on March 15, 2002. The List included MATIS and listed a cure amount of $1,154,188.20. The notice accompanying the List stated, "The Debtors seek to assume certain executory contracts ... and assign such contracts ... to Shaw .... If no objection is timely received ... the Assumed Con-

tract shall be deemed assumed and assigned to Shaw or the Successful Bidder(s) on the closing date of such sale." Footnote one on the notice stated,

Nothing contained herein shall be deemed an admission by the Debtors that any contract, lease or other agreement listed on the exhibit attached hereto is, in fact, an executory contract or an unexpired lease. The Debtors specifically reserve their right to argue that (I) any such contract, lease or other agreement is not an executory contract or an unexpired lease.

On March 26, 2002, Shaw filed the APA again, this time with Schedules 2.02(b) (completed contracts), 5.15(b) (excluded contracts), and 3.17 (assumed contracts) attached. Schedule 3.17 did not list any of the MATIS contracts or a cure amount. On March 28, 2002, Notice of the Shaw APA was sent by the Debtors. The Sale Notice attached the APA but stated that the "List of Assumed Contracts... has been filed with the Bankruptcy Court and is available through PACER at www.deb.uscourts.gov. In addition the List is available at www.theitgroup.com." That List, however, was the List prepared by the Debtors which did contain the MATIS contracts and cure amount.

The auction of the Debtors' assets was held on April 18, 2002, and Shaw was the winning bidder. The next day, April 19, 2002, we held a hearing to consider the sale. On April 25, 2002, we entered the Sale Order approving the sale of assets to Shaw. The Sale Order states:

The Assumed Contracts shall consist of those unexpired leases and executory contracts listed on Schedule 3.17 to the Agreement attached hereto as Exhibit A.

The MATIS contracts were not listed on Schedule 3.17, which was attached to that Order.

*Id.,* at 733–734.

As is noted above, the list prepared and noticed by Debtors on March 15, 2002 pursuant to the Court's Order contained virtually all of Debtors' prime and subcontracts which could be assumed. Ultimately, however, it was up to Shaw, as the successful bidder, to determine and specify which contracts, and/or subcontracts, it wanted assumed and formally assigned to it and which it did not. Reflective of Shaw's decisions in this regard, therefore, Schedule 3.17, attached to the APA when Shaw filed it on March 26, and attached to it when the Sale Order was entered, included only prime contracts, and all or virtually all subcontracts which had been assembled on the earlier list noticed by Debtors were omitted.

In *MATIS,* a subcontractor of the Debtors sought to compel Shaw to cure defaults under its contract, contending that it had been assumed and assigned to Shaw. The subcontract of the plaintiff was on the list compiled by the Debtors prior to the sale, but was not on the list compiled by Shaw, included in Schedule 3.17 attached to the APA, and specifically referred to in the Sale Order. Judge Walrath concluded that the subcontract had not been assumed and that therefore Shaw had no obligation to pay the cure amount set forth in the earlier list. In reaching this conclusion, Judge Walrath relied upon, *inter alia, University Medical Center v. Sullivan (In re University Medical Center),* 973 F.2d 1065 (3d Cir.1992), where the Court stated that court approval is a prerequisite to a debtor's assumption of an executory contract. "In order to insure that a debtor has the opportunity to assess the advantages and disadvantages of assuming a contract, assumption must be approved.

It cannot be presumed." *Id.,* at 1077. *See also, In re Luscombe Engineering Co.,* 268 F.2d 683 (3d Cir.1959).

### D. Plaintiff's Motion for Partial Summary Judgment

As was contemplated at the April 14 hearing, Plaintiff limits its Motion for Partial Summary Judgment to the Kiwi Defense asserted by Defendants in their answers to the complaints. It is first asserted that Defendants' subcontracts were not assumed by Debtors, and that therefore the Kiwi Defense is not available to those Defendants.

Plaintiff also addresses the argument raised by some Defendants, that the holding in *Kiwi* should be extended beyond the contracting parties to an assumed executory contract, and should be applied as well to subcontracts which are shown to be integral to and inseparable from an assumed contract.

Defendants presumably rely upon *Philip Services Corp., et al. v. Andrew Luntz, et al. (In re Philip Services (Delaware), Inc.),* 284 B.R. 541 (Bankr.D.Del.2002), *aff'd* 303 B.R. 574 (D.Del.2003), for their position. In that case, a stranger to an allegedly assumed executory merger agreement asserted a *Kiwi*-type defense against the attempted avoidance of a $5 million pre-petition transfer it received on account of a promissory note. Chief Judge Walrath held that the transfer was indeed shielded from avoidance. The promissory note had been issued as consideration for an executory merger agreement which was assumed pursuant to § 365 and the Court, after analyzing the transactions, concluded that the parties had intended the merger agreement and the promissory note to be considered inseparable parts of a single, integrated agreement. *Id.,* at 547.

Plaintiff argues that no Defendant has demonstrated that its subcontract is entitled to the treatment afforded the defendant in *Philip*, i.e., that it forms an inseparable part of an assumed prime contract, requiring integration of the two. Furthermore, Plaintiff contends that Defendants are judicially estopped from arguing that Defendants' subcontracts were integrated with the prime contracts. Plaintiff points out that the Sale Order, entered more than three years ago, required that parties asserting any objection to contract assumption based upon a claim of integration of a prime contract and a subcontract, file an objection, which would be heard and decided by the Court at a subsequent hearing. (Order dated April 25, 2005, at 11–12) Plaintiff asserts that no Defendant filed such an integration objection, that their right to pursue such a position has been long extinguished, and that principles of *res judicata* prevent Defendants from now collaterally attacking the Sale Order.

■ It is clear to this Court, that under the specific holding in *Kiwi*, none of these Defendants can prevail on the Kiwi Defense unless their particular contract or subcontract was specifically listed on Schedule 3.17, filed when the Sale Order was entered and referred to in that Order, since their contract or subcontract was not assumed by Debtors under § 365. To the extent that Defendant in any of the above-captioned adversary proceedings asserts the Kiwi Defense, i.e., that their contract or subcontract was assumed by Debtors and assigned to Shaw in connection with the purchase of Debtors' assets, and the contract or subcontract under which it is claiming such defense is not listed on the final Schedule 3.17, that issue at least, may now be put to rest. It is appropriate in those circumstances that judgment on that issue be entered in favor of Plaintiff on its Motion for Partial Summary Judgment.

Although this Court made clear at its April 14, 2005 hearing that the motions which it authorized were to be limited to the Kiwi Defense, some Defendants have asserted in their own motions and briefs, and in response to Plaintiff's motion, other theories, including theories upon which they urge that this Court may rule in their favor on the § 547(b)(5) issue. These Defendants presumably consider these other theories to be derivative of, or the logical extension of *Kiwi*. This Court is of the view that the application of *Kiwi* must be limited to the situation before it, i.e., the effect of contract or lease assumption under § 365 upon the Trustee's right to seek avoidance and recovery of pre-petition transfers under §§ 547 and 550. That is not to say that other circumstances implicating Plaintiff's ability to satisfy § 547(b)(5) may not be raised by Defendants, but it is not appropriate that they be raised, and they will not be decided, in the context of this Motion by Plaintiff.

## IV. *Conclusion*

Plaintiff's Motion for Partial Summary Judgment with Respect to the Kiwi Defense is granted as to any Defendant whose contract or subcontract was not listed on Schedule 3.17 of the APA when the Sale Order was entered, and was therefore not formally assumed by Debtors.