**In re UNITED ARTISTS THEATRE COMPANY, et al., Debtors.**

**Hacienda Heating & Cooling, Inc., Plaintiff,**

v.

**United Artists Theatre Circuit, Inc., Defendant.**

**Bankruptcy No. 00–03514(PJW).**
**Adversary No. 09–50896(PJW).**

United States Bankruptcy Court, D. Delaware.

June 19, 2009.

William P. Bowden, Stacy L. Newman, Ashby & Geddes, P.A., Wilmington, DE, Keith Beauchamp, Naomi Jorgensen, Coppersmith Schermer & Brockelman, PLC, Phoenix, AR, for United Artists Theatre Circuit, Inc.

Kathleen M. Miller, Smith, Katzenstein & Furlow LLP, Wilmington, DE, Christo-pher A. LaVoy, LaVoy & Chernoff, PC, Phoenix, AR, Edward Moomjian II, Udall Law Firm, LLP, Tucson, AR, for plaintiff Hacienda Heating & Cooling, Inc.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to two motions for partial summary judgment brought by Hacienda Heating and Cooling, Inc. ("Hacienda") regarding whether United Artists Theatre Circuit, Inc. ("United Artists") sent notice of its bankruptcy ("Notice") to a list of certain individuals and entities in compliance with due process (Doc. ## 35 and 36). For the reasons discussed below, I will deny the two motions for partial summary judgment.

## BACKGROUND

On November 18, 1999, ESI Ergonomic Solutions, L.L.C. ("ESI") filed a complaint against United Artists and American Blast Fax, Inc. ("American Blast") in Maricopa County Superior Court of the state of Arizona claiming that United Artists and American Blast violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Case No. CV99–20649.) The TCPA bars sending a junk fax advertisement without obtaining prior express invitation or permission of the recipient, and provides for statutory damages of $500 per junk fax violation. 47 U.S.C. § 227(b)(1) and (3). ESI alleged that, in September 1999, United Artists and American Blast sent 90,000 movie-ticket advertisements to fax machines in the metro-Phoenix area without receiving express permission or invitation. The complaint was filed as a putative class action wherein ESI sought to represent the class of those individuals and entities who received the junk fax advertisement. (Adv.Doc. # 35, p. 3.)

On September 5, 2000, United Artists, along with numerous related entities ("Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (Case No. 00–03514.) Pursuant to 11 U.S.C. § 362(a), the Arizona state court proceeding was stayed.

On November 7, 2000, ESI filed a class proof of claim in the chapter case. That proof of claim acknowledges that the claim is a prepetition unsecured non-priority claim against United Artists. (Doc. # 512, ex. 4.)

In connection with the Arizona state court proceeding, American Blast claimed that it did not preserve the database of fax numbers to which the junk fax advertisement was sent, but it did produce a database ("Database") which contained all of the fax numbers to which the junk fax advertisement originally was sent, plus a few extra fax numbers ("Recipients"). (Adv.Doc. # 35, p. 3.) Relying upon the Database, United Artists sought permission to send Notice of the bankruptcy to the Recipients. (Doc. # 55.) The proposed Notice specified that "this notice is being sent to holders of potential claims pursuant to 47 U.S.C. § 227 pertaining to transmissions that might have been received by such holders from the debtors" and advised such holders as to the bar date and the need to file a proof of claim. (*Id.* at ex. C.) Judge Sue L. Robinson, then Chief Judge of the United States District Court for the District of Delaware, who heard the bankruptcy case, ordered this Notice be sent using the Database. (Doc. # 504.)

Further, in connection with the bankruptcy proceeding, on January 22, 2001, ESI obtained an order lifting the automatic stay and allowing the state court litigation to proceed. The order provided that ESI could enforce any settlement, judgment, or other disposition of the underlying claims in the Arizona state court litigation only against any of the Debtors' insurance policies and proceeds therefrom; the order specifically excluded collecting judgment from the Debtors, their bankruptcy estates, or their assets. (Doc. # 854.) Also on January 22, 2001, the Debtors' second amended plan of reorganization was confirmed. (Doc. # 604 and 907.)

The Arizona state court then certified the class as those individuals and entities in the Database who received the initial junk fax. On November 7, 2003, it entered summary judgment in favor of the class for at least 57,600 TCPA violations,[1] resulting in an aggregate statutory damage award against United Artists and American Blast of $28.8 million plus pre-and-post-judgment interest at the rate of ten percent per annum. (Adv.Doc. # 4, ex. 3.) United Artists filed motions to decertify the class and to vacate or reconsider the grant of partial summary judgment. The Arizona state court denied both motions. (Adv. Doc. # 71, ex. 10 and 11.)

On March 13, 2008, Hacienda filed a class action complaint in the United States District Court for the District of Arizona against United Artists on behalf of itself and all others similarly situated—the class certified in the state action, excluding ESI—to have the discharge granted United Artists, and other bars or prohibitions arising from the bankruptcy, declared null and void as to the pursuit and collection of the $28.8 million plus interest damage

---

**1.** Specifically, the court's ruling was for partial summary judgment and ordered that a trial be held to determine how many more TCPA violations (in excess of 57,600) actually had occurred. However, ESI conditionally waived the right to establish additional violations. (Adv.Doc. # 35, p. 5, n. 9.)

award. (Adv.Doc. # 4.) Hacienda argues that there is no evidence that the Notice was ever sent (Adv.Doc. # 35), and even if the Notice was sent, that its content failed to adequately inform the Recipients of their claims and rights, and, thereby, the Recipients' due process rights were violated. (Adv.Doc. # 36.)

In response, United Artists asserts that American Blast sent the Notice to the Recipients, specifically offering the deposition of Greg Horne, principal of American Blast, who testified that he remembered supervising its sending. (Adv. Doc. # 37, ex. 5, 81:21–22; Adv. Doc. # 57, p. 7.) As to the content of the Notice, United Artists argues that it was sufficient, specifically noting that Judge Robinson approved the form and content of the Notice sent. (Adv. Doc. # 51.) Thereby, United Artists contends that the Recipients are bound to the bankruptcy discharge, orders, and proceedings as a matter of *res judicata,* and that the proceedings operated to discharge United Artists' obligation to pay the damages award. (Adv.Doc. # 35, p. 5.)

On May 12, 2008, United Artists filed a motion to dismiss Hacienda's complaint for lack of subject matter jurisdiction, or, in the alternate, to transfer venue. On March 31, 2009, the District Court ordered that venue be transferred to this Court. (Adv.Doc. # 1.) Before venue was transferred, on January 26, 2009, United Artists filed a Fed.R.Civ.P. 56(f) motion for continuance pending discovery. (Adv.Doc. # 50.) Accordingly, the Court will address three motions: (1) Hacienda's motion for

partial summary judgment regarding failure to send the Notice; (2) Hacienda's motion for partial summary judgment regarding the inadequate content of the Notice; and (3) United Artists' Rule 56(f) motion for a continuance.[2]

## DISCUSSION

*Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr.P. 7056; Fed.R.Civ.P. 56; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re IT Group, Inc.,* 331 B.R. 597, 600 (Bankr. D.Del.2005). The Court must view all factual inferences "in the light most favorable to the nonmoving party." *In re IT Group,* 331 B.R. at 600 (citing *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The moving party bears the burden of showing there are no genuine issues of material fact that would preclude summary judgment.[3] *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has met this burden, the burden shifts to the non-moving party to show that a genuine issue of material fact does in fact exist. *In re IT Group,* 331 B.R. at 600.

*Rule 60(b)*

Before Hacienda's motions are considered, I must resolve United Artists'

---

**2.** As related to this proceeding, I note that Hacienda has filed a motion for class certification. I have yet to consider that motion.

**3.** Hacienda asserts that United Artists bears the burden of proving it gave notice consistent with due process, seemingly tying that assertion to United Artists' raising of *res judicata* as a bar to Hacienda's motion. (Adv.

Doc. # 35, pp. 5–7.) However, United Artists did not bring a motion for summary judgment as to that argument; rather, Hacienda brought the instant motions. United Artists' argument merely is in response to Hacienda's assertions. Hacienda clearly is the moving party and it bears the burden of proof as to its motions for partial summary judgment.

contention that Hacienda's complaint is barred by the one-year deadline of Fed. R.Civ.P. 60(c)(1). (*See* Adv. Doc. # 51, pp. 5–7.) Fed.R.Civ.P. 60(b), made applicable to this proceeding by Fed. R. Bankr.P. 7060, sets forth five specific "grounds for relief from a final judgment, order, or proceeding" and a sixth "catch-all" provision: "any other reason that justifies relief." Discharge orders are final judgments. *See, e.g., Espinosa v. United Student Aid Funds, Inc.*, 545 F.3d 1113, 1119 (9th Cir.2008) ("A bankruptcy discharge order is a final judgment....").

United Artists argues that Hacienda's complaint, though brought as an independent action to declare United Artists' discharge void for lack of notice, should be considered to be a Rule 60(b) motion attacking a final judgment. Further, United Artists argues that Hacienda's complaint, at its crux, contends that Judge Robinson made a mistake in approving the content of the Notice and then later in entering United Artist's discharge order in the bankruptcy case which specifically stated that a Certificate of Service as to the Notice was filed with this Court. A challenge to a final judgment based on "mistake" or "inadvertence" falls under Rule 60(b)(1); requests for relief under Rule 60(b)(1) must be made "no more than a year after entry of the judgment or order of the date of the proceeding." Fed R. Civ. P. 60(c)(1). Similarly, United Artists views Hacienda's complaint as an action under Rule 60(b)(3) to vacate a judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Requests for relief under Rule 60(b)(3) likewise must be made within the one-year deadline. Fed.R.Civ.P. 60(c)(1); *see also* Fed.R.Civ.P. 60(d)(1) ("This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding.").

 I do not need to decide whether Hacienda's independent action should be considered to be a Rule 60(b) motion that carries with it a one-year filing deadline. Hacienda is alleging that it and others similarly situated were denied due process. A judgment obtained without proper notice is void. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (noting that "[d]ue process requires that the defendant be given adequate notice of the suit" and that "[a] judgment rendered in violation of due process is void"). A void judgment may be attacked at any time, regardless of statute of limitations and other deadlines. *See, e.g., United States v. One Toshiba Color TV.*, 213 F.3d 147, 157 (3d Cir.2000) (noting that if a final judgment is void, "no passage of time can transmute [it] into a binding judgment" and further stating that "a court may always take cognizance of a judgment's void status whenever a Rule 60(b) motion is brought"). Either Hacienda's complaint is an independent action, which may be brought at any time, or it is a Rule 60(b) motion and, pursuant to overwhelming precedent, I may consider whether United Artists' discharge is void as to Hacienda and others similarly situated regardless of laches.[4]

---

**4.** Though United Artists argues that Hacienda's independent action actually is a Rule 60(b)(1) and (3) motion, if Hacienda's complaint truly is a Rule 60(b) motion, it is a Rule 60(b)(4) motion seeking relief because "the judgment is void." Fed.R.Civ.P. 60(b)(4); *Owens–Corning Fiberglas Corp. v. Ctr. Whole-* *sale, Inc. (In re Ctr. Wholesale),* 759 F.2d 1440, 1445 (9th Cir.1985) (noting that Owen–Corning's Rule 60(b)(4) motion raises issues of due process). Pursuant to Rule 60(c)(1), a Rule 60(b)(4) motion must be made within a "reasonable time," and is not subject to the one-year deadline. Fed.R.Civ.P. 60(c)(1). In

*Alleged Failure To Send Notice*

█ Among its many arguments in support of its assertion that the Notice never was faxed to Recipients, Hacienda points to the deposition of Greg Horne, principal of American Blast, as to a Certificate of Service sworn to by him and notarized. (Adv.Doc. # 35, pp. 11–12.) That Certificate of Service reads: "I [Greg Horne] supervised the delivery of facsimile of the Notice." (Adv.Doc. # 57, p. 7.) When deposed as to whether he recalled seeing the Certificate of Service, Horne stated: "I don't recall it, but obviously I have." (Adv.Doc. # 37, ex. 5, 80:7–17.) Then when showed the Notice that Judge Robinson approved and asked whether he had "any specific recollection" of sending out the Notice, Horne stated: "I remember doing it." (*Id.* at 81:15–22.)

Reading his deposition together with the Certificate of Service, conceivably Horne meant that he remembered supervising the delivery of the fax. This constitutes evidence that the Notice was sent. However, there is no evidence as to what "supervise" means. Did Horne watch another employee fax the Notice? Did he verbally give direction to another employee to fax the Notice? Did he send an email to another employee to fax the Notice? Did Horne follow-up with that employee? Did Horne do it himself? Whether or not the Notice actually was faxed under the "supervision" of Horne is a genuine issue of material fact. Horne should be allowed to testify as to what "supervise" means. Given Home's central role in this dispute, I favor a trial on the merits so that I can make a judgment as to Home's credibility. Accordingly, a genuine issue as to a material fact exists.

In addition, Hacienda argues that the fact that none of the 90,000 Recipients of the initial fax, except ESI, filed a proof of claim in United Artists' bankruptcy case conclusively demonstrates that the Notice was never faxed. (Adv.Doc. # 35, p. 12.) However, the Recipients may have received the Notice and decided not to file a proof of claim for a number of reasons. Perhaps the Recipients didn't consider filing a proof of claim for a $500 claim worthwhile. Given the extensive legalize set forth in the Notice, it seems obvious that a non-lawyer Recipient would need to consult with counsel. For a potential $500 recovery, the prospect of hiring counsel for assistance would weigh heavily against filing a proof of claim. Furthermore, one would have to assume that the Recipient was familiar with TCPA—a questionable assumption.

Also, the Notice was faxed early on in the bankruptcy case, nearly a year after the initial fax was sent. Perhaps the Recipients couldn't remember whether they had received the initial fax by the time they received the Notice nearly a year later. The fact that none of the Recipients filed a proof of claim does not conclusively demonstrate that the Notice was never faxed. Genuine issues of material fact exist and I cannot grant Hacienda's motion for partial summary judgment regarding failure to send bankruptcy notice.

*Alleged Inadequate Content of Notice*

█ On November 14, 2000, Judge Robinson ordered that the Notice be sent in the same form and with the same content as attached to her signed order. (Doc. # 506.) It is that form of Notice with the same content that Hacienda claims is inadequate for various reasons. Judge Robin-

the context of a void judgment, courts have held that a Rule 60(b)(4) motion may be brought at any time and not merely within a "reasonable time." *See, e.g., In re Ctr. Whole-* *sale,* 759 F.2d at 1448 ("[D]elay in bringing its Rule 60(b)(4) motion is irrelevant."). Accordingly, Hacienda's complaint is not time-barred.

son specifically approved the form and content of the Notice. In so doing, I assume she read and considered whether the form and content of the Notice was adequate to notify Recipients of their claims; indeed, it would be improper for me not to assume so without further evidence.

■ Hacienda points to a string of cases for the proposition that courts do not view such prior approval as a bar to subsequent attack of an order based on due process. While these cases demonstrate that courts have addressed due process in the context of prior approved orders, I do not find that they require me to second-guess Judge Robinson's decision as to the content of the Notice at this time. The cited cases either addressed the delivery of the notification, or the order at issue contravened the plain language of the bankruptcy code, and thereby, demanded greater scrutiny. *City of New York v. New York*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953) (holding that notice by newspaper publication is an inappropriate substitute for actual service of notice when the recipients' addresses are known); *ATD Corp. v. Advantage Packaging, Inc.*, 352 F.3d 1062 (6th Cir.2003) (holding that a prior approved bar date order that directed all creditors to file a

proof of claim was not sufficiently clear to alert those creditors whose claims are deemed to have filed a proof of claim pursuant to 11 U.S.C. § 1111(a) that they nonetheless were required to file a proof of claim in order for their claim to be recognized); *Grand Pier Center LLC v. ATC Group Services, Inc.*, 2007 WL 2973829 (N.D.Ill. Oct. 9, 2007) (holding that because a prior approved notice failed to mention a certain debtor entity *anywhere* in it, the notice was insufficient for purposes of due process).[5]

The content of the Notice at issue facially comports with due process: all the appropriate debtors, including United Artists, are mentioned somewhere in the Notice and details of the Recipients' claim are included in the Notice. If either Hacienda or United Artists can produce additional evidence regarding the circumstances of Judge Robinson's approval of the notice, such as whether certain issues as to the content were litigated in court, then I would consider the extent to which I can comfortably inspect the minutia of Judge Robinson's reasoning. Indeed, this demonstrates that there is a genuine issue of material fact outstanding as to the import of the Notice. Thus, Hacienda's motion for partial summary judgment re-

---

**5.** I also note that all these cases were appeals from a bankruptcy court's grant of an order. In the context of an appeal, the bankruptcy court's order is reviewed under "the clearly erroneous standard [as] to the factual findings and a de novo review [as] to the conclusions of law." *ATD Corp.*, 352 F.3d at 1065. Hacienda's action is not couched as an appeal of Judge Robinson's order; rather, Hacienda asserts that it is bringing an independent action attacking the order seven years after it was approved by Judge Robinson. An appeal brought within the time frame provided by the Federal Rules of Civil Procedure and an independent action brought years after that time frame expired are quite different. Though I recognize that actions regarding due process may be brought at any time, the

interests of finality and appropriate deference to fellow judges' reasoning do not disappear simply because an action raises due process. Accordingly, I look upon Judge Robinson's order as to the Notice with appropriate deference, and assume that she undertook a consideration of its adequacy. I further note that Hacienda argues that there is no evidence in the record that the court specifically considered the due process adequacy of the Notice. There is no evidence that the court did *not* consider the due process adequacy of the Notice. Importantly, considering that adequacy is part of a court's duties upon approving such a notice. Presuming that Judge Robinson did not do so without further evidence seems improper even in the context of an action regarding due process.

garding the inadequate content of the Notice is denied.

*United Artists' Rule 56(f) Motion*

In its Rule 56(f) motion, United Artists asks for additional time to conduct discovery before the Court rules on Hacienda's motions. In light of my denial of Hacienda's dual motions for summary judgment as to the Notice, United Artists' motion is moot: discovery should proceed.

### CONCLUSION

For the reasons discussed above, Hacienda's motions for partial summary judgment regarding failure to send the Notice and for partial summary judgment regarding the inadequate content of the Notice are denied. The parties are invited to contact chambers to arrange a conference with the court to establish a schedule for discovery and trial.

### ADDENDUM

I believe that Hacienda's damage claim is highly inflated and its prospects for recovery are quite limited.

As of March 13, 2008, Hacienda claims that, including interest, the total damage amount is approximately $52 million. (Adv.Doc. # 4, p. 1.) The amount is calculated as: the $28.8 million award plus ten percent per annum interest from the date the Arizona state court action was filed through the date of Hacienda's filing of the declaratory judgment complaint in the district court. Moreover, Hacienda claims that additional interest will accrue as time passes.

Pursuant to 11 U.S.C. § 502(b)(2), the general rule is that the accrual of interest is suspended as of the date of filing of a bankruptcy petition—that is, a claim is disallowed to the extent that "such claim is for unmatured interest." 11 U.S.C. § 502(b)(2). Stated suc-

cinctly, payment of post-petition interest on pre-petition unsecured claims is prohibited. This rule has been described "as a, rule of administrative convenience and fairness to all creditors' that makes it possible to calculate the amount of claims easily and assures that creditors at the bottom rungs of the priority ladder are not prejudiced." *In re Quick,* 152 B.R. 902, 906 (Bankr.W.D.Va.1992) (quoting *In re Hanna,* 872 F.2d 829, 830 (8th Cir.1989)). Indeed, the rule finds its roots in § 63(a) of the former Bankruptcy Act which allowed "interest on judgments and written instruments only to date of bankruptcy." *City of New York v. Saper,* 336 U.S. 328, 331, 69 S.Ct. 554, 93 L.Ed. 710 (1949). Section 63(a) of the Bankruptcy Act was incorporated into § 502(b) of the Bankruptcy Code. *See, e.g., In re Bank of New Eng. Corp.,* 359 B.R. 384, 387 (Bankr. D.Mass.2007) (" § 63(a)(1) [of the Bankruptcy Act], like the present law's § 502(b)(2), denied creditors post-petition interest.").

Case law makes it clear that judgments are unsecured claims on which interest is allowed to accrue only to the date of bankruptcy filing. *See Shoen v. Shoen,* 176 F.3d 1150 (9th Cir.1999) (allowing post-petition interest on a state court judgment received the exact day the bankruptcy petition was filed because the judgment was not strictly a monetary judgment, but turned on the transfer of stock and other property, and noting that such a ruling was unique and that post-petition interest is generally disallowed); *In re Holm,* 931 F.2d 620, 622 (9th Cir.1991) (noting that "unmatured interest" on a judgment is "excluded from allowable claims pursuant to 11 U.S.C. § 502(b)(2)"); *In re Pitts,* 31 B.R. 90, 91 (Bankr.N.D.Ga.1983) (noting that a proof of claim for a state court judgment received pre-petition is deemed allowed unless the claim is for unmatured

interest, among other exceptions). Significantly, in *In re Lamarre*, 269 B.R. 266, 267 (Bankr.D.Mass.2001), the court clearly stated, "postpetition interest, whether it is prejudgment or postjudgment, cannot be included in the claim against the estate." In that case, a state court action was filed against a defendant who subsequently filed for chapter 7 bankruptcy before a judgment was entered as to the state court action. The later-entered judgment with respect to the state court claim carried with it prejudgment interest at the rate of twelve percent per annum and post-judgment interest at a slightly lower rate. The court held that the plaintiffs in the state court action, now claimants, were entitled to prejudgment interest from the time the state court action was filed until the date of debtors' chapter 7 petition, and were not entitled to any post-petition interest.

Accordingly, I find that although the Arizona state court judgment is for $28.8 million plus interest at ten percent per annum from the date the state court action was filed, November 18, 1999, to the date judgment is paid, interest stopped accruing as of the date of United Artists' bankruptcy petition, September 5, 2000. Therefore, the correct amount of total damages is approximately $31,104,000.

Moreover, consistent with statute and case law, this total damages amount constitutes a general unsecured claim. Indeed, ESI's filed proof of claim acknowledges that the claim is a general unsecured claim. (Doc. # 512, ex. 4.) The claim is included in Class 2F of United Artists' confirmed second amended plan of reorganization. (Doc. # 604, p. 23.) That class' projected expected recovery is 5.2 percent and that class' estimated amount of claims is $96,469,000. (Doc. # 642, p. 29.) Thus, pursuant to the confirmed plan, Hacienda will only able to recover a percentage of the $31,104,000 in total damages.

For the purposes of calculating the potential ultimate recovery, I assume that the $96,469,000 listed in United Artists' second amended disclosure statement were eventually determined to be allowed claims. Based on United Artists' filed statement of assets and liabilities, this amount does not include the class action damage award. (Doc. # 260, schedule F, p. 45 (listing ESI's litigation as "contingent, unknown, disputed" and not including a projected claim).) Once the instant claim is included in the amount of Class 2F claims, the total amount of Class 2F claims becomes $127,573,000 ($96,469,000 plus $31,104,000). With Class 2F claims of $96,469,000, the project recovery was 5.2 percent. Therefore, the amount of funds available for prorata distribution in Class 2F is $5,016,388 ($96,469,000 times 0.052). Once the $31,104,000 claim is included within Class 2F, the total claims in Class 2F are $127,573,000 and the expected recover drops to 3.93 percent ($5,016,388 divided by $127,573,000). Thus, the potential ultimate recovery for the class is $1,223,062; that amounts to about $21 per class member.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Plaintiff's motions (Doc. ## 35 and 36) for partial summary judgment regarding failure to send the Notice and for partial summary judgment regarding the inadequate content of the Notice are denied.