In re LAMBERTSON TRUEX, LLC, Debtor.

Maurice Dembsky, as Liquidation Trustee of the LT Liquidation Trust, Successor in Interest to Lambertson Truex, LLC, Plaintiff,

v.

Frommer, Lawrence & Haug, LLP, Defendant.

Bankruptcy No. 09–10747 (PJW).
Adversary No. 10–55563 (PJW).

United States Bankruptcy Court, D. Delaware.

Oct. 5, 2011.

Johnna M. Darby, The Darby Law Firm, LLC, Adam Hiller, Hiller & Arban, LLC, Wilmington, DE, for Plaintiff, Maurice Dembsky, as Liquidation Trustee of the LT Liquidation Trust, Successor in Interest to Lambertson Truex, LLC.

Stephen B. Brauerman, Justin R. Alberto, Bayard, P.A., Wilmington, DE, Steven M. Amundson, Frommer Lawrence & Haug LLP, New York, NY, for Defendant Frommer Lawrence & Haug LLP.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with regard to the motion for summary judgment filed by Maurice Dembsky, Liquidation Trustee of the LT Liquidation Trust as successor in interest to Lambertson Truex, LLC ("Plaintiff"), in the adversary proceeding against Frommer, Lawrence & Haug, LLP ("Defendant") (Doc. # 23). For the reasons discussed below, I will grant the motion.

### Background

Lambertson Truex LLC ("Debtor") was a designer of luxury consumer goods. Prior to the commencement of its bankruptcy case, Debtor engaged Defendant, a law firm, to register its "LT" trademark in various countries, including countries in Europe. (Arfanis Decl.[1] ¶ 2.) To handle the European Community registration, Defendant contacted Gilbey Delorey (formerly Gilbey de Haas and herein "Gilbey"), a Paris-based law firm. (Id. ¶ 3.) Gilbey secured the registration in 2000 and the renewal of the registration in 2008, with Defendant acting as a liaison between Debtor and Gilbey. (Id. ¶¶ 4–8.) Upon completion of the renewal process in November 2008, Gilbey sent an invoice to Defendant for $2,371.94. (Id. ¶ 9.) On December 10, 2008, Defendant submitted an invoice to Debtor for fees incurred in securing the European Community trademark renewal. (Id. ¶ 10.) The invoice listed Defendant's fee of $77.50 for ser-

---

1. "Arfanis Declaration" refers to the Declaration of Dean P. Arfanis In Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment. (Doc. # 18.) Mr. Arfanis is the Director of Administration of Defendant. (Arfanis Decl. ¶ 1.)

vices performed, as well as a disbursement of $2,371.94 for "foreign associate's fee for application renewal of registration." (Ex. J.[2]) Defendant paid Gilbey $2,371.94 by check dated January 6, 2009, in satisfaction of Gilbey's invoice. (Arfanis Decl. ¶ 9; Ex. L.)

On March 5, 2009, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* The First Amended Plan of Liquidation ("the Plan") provided for the creation of the LT Liquidation Trust ("Trust"), successor in interest to Debtor. Under the terms of the confirmed Plan, Defendant held a claim against Debtor's estate for the unpaid invoice amount. (Plaintiff's Opening Brief, at 2.) Defendant's claim was classified in Class 4, and this Court authorized Debtor or Trust to pay Defendant $367.42 on account of the claim. (*Id.*) However, on or about the effective date of the Plan, Debtor paid Defendant $2,449.44, far in excess of the amount authorized by the Plan. (*Id.*) The check from Debtor to Defendant is dated September 24, 2009. (Ex. K.)

On November 24, 2011, Plaintiff brought an action to avoid and recover the transfer of $2,082.02 (the amount in excess of the authorized $367.42 recovery) as an unauthorized post-petition transfer, pursuant to §§ 549 and 550 of the Bankruptcy Code.[3] (Doc. # 1.) In his Complaint Plaintiff alleges that the payment was a transfer of estate property made after the commencement of the bankruptcy case and was unauthorized by the Court or under the Bankruptcy Code. (Compl.¶¶ 11–16.)

Plaintiff later filed this motion for summary judgment on the claim. (Doc. # 24.)

Defendant responds by asserting that it was not a "transferee" as contemplated by § 550, and thus Plaintiff cannot recover the payment from Debtor. (Doc. # 17.) Defendant argues that it "acted as a mere conduit and was not a 'transferee'" for "more than 95%" of the overpayment, since all but $77.50 was for Gilbey's fee. (Opp'n, at 1, 6–8.) Defendant asserts that its role as liaison between Debtor and Gilbey, who actually performed the work in renewing the registration, imposed an obligation on Defendant to "pass along the vast majority of the funds at issue to Gilbey Delorey." (*Id.* at 6.) According to Defendant, this obligation and the fact that Gilbey sent Defendant an invoice for its services show that Defendant "acted as a mere conduit throughout the transaction" and was thus not a transferee. (*Id.* at 8.)

**Jurisdiction**

This court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334 and 157.

**Standard of Review**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr.P. 7056; Fed.R.Civ.P. 56. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *IT Litigation Trust v. Alpha Analytical Labs, et al. (In re IT Group, Inc.),* 331 B.R. 597, 600 (Bankr.D.Del.2005). The

---

**2.** Exhibits cited herein are those attached to the Arfanis Declaration.

**3.** Section 549 provides, in relevant part: "Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case; and ... that is not authorized under this title or by the

court." 11 U.S.C. § 549(a). Section 550 permits the trustee to "recover, for the benefit of the estate, the property transferred, or ... the value of such property from ... the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a).

Court must view all factual inferences "in the light most favorable to the nonmoving party." *In re IT Group,* 331 B.R. at 600 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Plaintiff, as the movant, bears the burden of showing there are no genuine issues of material fact that would preclude summary judgment. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once Plaintiff has met this burden, the burden shifts to Defendant to show that a genuine issue of material fact exists. *See In re IT Group,* 331 B.R. at 600. "A genuine issue of material fact is present when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In meeting its burden, Defendant "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed.R.Civ.P. 56(e)).

### Discussion

The parties here do not dispute the majority of the facts underlying the transfer. The sole issue in contention is whether Defendant is a "transferee" for the purposes of § 550. Defendant alleges that it is "a mere conduit" of the funds from Debtor to Gilbey and thus is not a transferee from which Plaintiff can recover. If Defendant is not a transferee, I must deny the motion for summary judgment. If, on the other hand, Defendant is a transferee,

there is no genuine dispute about a material fact, and I may grant Plaintiff's motion.

Although the Bankruptcy Code does not define "transferee," courts have imposed the requirement that a party have dominion and control over the transferred funds or property in order to be a transferee under § 550. *See Bonded Fin. Servs., Inc. v. European American Bank,* 838 F.2d 890, 893 (7th Cir.1988). This requirement has created the "mere conduit" defense "for parties who act as a mere conduit in receiving a transfer solely for another and not for their own benefit." *Argus Mgmt. Grp. v. GAB Robins, Inc. (In re CVEO Corp.),* 327 B.R. 210, 216 (Bankr.D.Del. 2005). It is this defense that Defendant is invoking in this case.[4]

■ This Court has adopted the Seventh Circuit's "dominion and control" test for whether a party is a transferee within the meaning of § 550. *In re Mervyn's Holdings,* 426 B.R. 96, 103 (Bankr.D.Del. 2010) (citing *In re Factory 2–U Stores, Inc.,* 2007 WL 2698207, *3 (Bankr.D.Del. Sept. 11, 2007)(citing *Bonded Fin. Servs.,* 838 F.2d at 893)). *See also In re Gruppo Antico, Inc.,* 359 B.R. 578 (Bankr.D.Del. 2007); *In re Lenox Healthcare,* 343 B.R. 96 (Bankr.D.Del.2006). In *Bonded,* the Seventh Circuit stated that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." *Bonded,* 838 F.2d at 893. Where one party is acting as an agent on behalf of another, the analysis does not change: "When A gives a check to B as agent for C, then C is the 'initial transfer-

---

**4.** Plaintiff urges me to conclude that the "mere conduit" defense is inapposite to post-petition transfers, since *Argus,* the case upon which Defendant primarily relies, involves a preference action. In Delaware and in other bankruptcy courts in the Third Circuit, the "mere conduit" defense has not been restricted to preference actions; several courts have

discussed its application to actions for the avoidance of unauthorized post-petition transfers. *See, e.g., In re Lenox Healthcare, Inc.,* 343 B.R. 96 (Bankr.D.Del.2006); *In re Parcel Consultants,* 287 B.R. 41 (Bankr.D.N.J.2002). Thus, I will consider whether the defense applies to Defendant in this case.

ee'; the agent may be disregarded" as the agent does not have control over the funds. *Id.*

■ Subsequent cases adopting the *Bonded* analysis have held that in order to use the "mere conduit" defense, the defendant must "establish that it lacked dominion and control over the transfer because the payment simply passed through its hands and it had no power to redirect the funds to its own use." *Argus,* 327 B.R. at 216. Having dominion and control "means to be capable of using the funds for 'whatever purpose [the party] wishes, be it to invest in lottery tickets or uranium stocks.'" *Id.* (citations omitted).

■ Defendant argues that it lacked dominion and control over the funds received from Debtor because "all but $77.50 simply passed through FLH's hands and it had no power to redirect the rest of the funds to its own use." (Opp'n, at 6.) In support of this statement, Defendant asserts that most of the funds were due to Gilbey, who performed the trademark renewal work, and that Defendant "acted as a go-between—a mere conduit—from Lambertson Truex to Gilbey Delorey." (*Id.*) In response, Plaintiff points out that Defendant paid the fees to Gilbey Delorey in January 2009, nine months before it received the transfer from Debtor, in satisfaction of Defendant's obligation to Gilbey Delorey. (Reply, at 3(citing Arfanis Decl., ¶ 23.))

This Court addressed a situation similar to the current action in *In re Lenox Healthcare,* 343 B.R. at 103–05. In *Lenox,* the debtor, Lenox Healthcare Inc., had entered into a pre-petition agreement with the defendant, Guardian Life Insurance Company of America, for Guardian to provide administrative services to Lenox for a fee. *Id.* at 99. The services included paying eligible claims for Lenox's employees under employee benefit plans. *Id.* Under the agreement, Guardian was to invoice

Lenox on a monthly basis for reimbursement of the claims paid, and Lenox agreed to remit a check for the full amount due upon receiving the invoice. *Id.* Pursuant to this arrangement, Lenox made several transfers to Guardian, some falling in the preference period and one occurring after Lenox had filed for bankruptcy. *Id.* When sued by the chapter 11 trustee for avoidance of the transfers, Guardian invoked the "mere conduit" defense. *Id.* at 103. Applying the dominion and control test to the facts at hand, the Court concluded that "the 'mere conduit defense' is not available to Guardian." *Id.* at 104. The Court noted that "the Transfers were payments from the Debtor to reimburse Guardian for its **advance** payment of employee claims. The transfers did not merely flow through Guardian to the health care providers." *Id.* (emphasis added). Since the agreement between Lenox and Guardian required Guardian to pay the employee claims first and then seek reimbursement from Lenox, Guardian "was not under any obligation to use the Transfers for the benefit of the [employee benefit plan] claimants and could use the Transfers for 'whatever purpose [it wished], be it to invest in lottery tickets or uranium stocks.'" *Id.* (citations and internal quotation marks omitted).

■ In light of this Court's precedent in *Lenox,* I hold that the "mere conduit" defense is unavailable to Defendant in this case. Like Guardian, Defendant fulfilled its obligation to pay a third party before it was reimbursed by Debtor. Defendant submitted an invoice to Debtor on December 10, 2008 (Ex. J) and paid Gilbey via check dated January 6, 2009 (Ex. L). Defendant did not receive payment from Debtor until September 24, 2009. (Ex. K.) At the time Defendant received the reimbursement from the Debtor, its obligation to pay Gilbey had long been extinguished

by the payment it made in January 2009. As a result, Defendant is not a conduit: "A true conduit's obligation to the transferee would not arise until the transferor paid the conduit and the amount of the obligation would depend on the amount the transferor paid to the conduit." *In re Cypress Rests. of Ga., Inc.*, 332 B.R. 60, 65 (Bankr.M.D.Fla.2005) (cited in *Lenox*, 343 B.R. at 104). In this case, Defendant's obligation to pay Gilbey had already arisen, and had already been satisfied by the time Defendant received the transfer from Debtor. As a result, Defendant was able to use those funds for whatever purpose it chose. Thus, Defendant did have dominion and control over the funds transferred to it by Debtor, and so it cannot rely on the "mere conduit" defense.

Defendant cites to *Argus* in support of its "mere conduit" defense. In that case, the debtor and the defendant had a contract under which the debtor would regularly transfer money to the defendant to be held in a "Loss Fund," from which the defendant was to pay workers' compensation claims against the debtor. *Argus*, 327 B.R. at 212. On a quarterly basis, the debtor replenished the Loss Fund and also paid a service fee to the defendant. *Id.* at 213. After the debtor filed for bankruptcy, the trustee for the creditors' reserve trust sought to avoid some of the transfers as pre-petition preferential transfers. *Id.* In considering the trustee's motion for summary judgment, the Court held that there was a material fact in dispute about the characterization of the transfers—that is, whether they were true reimbursements or whether they were payments made to replenish the Loss Fund. *Id.* at 215. The defendant argued that the Loss Fund was merely a "pass-through" account, over which it had no control, while the plaintiff asserted that the defendant did have the absolute and complete right to control the Fund. *Id.* at 217–18. It was unclear from the evidence in the record how much control the defendant had over the Loss Fund, and so the Court could not grant the plaintiff's motion for summary judgment on the preference action. *Id.*

■ Unlike *Argus*, however, here there is no question about the nature of the payment made from Debtor to Defendant. Defendant has not alleged that the payment was put into a special fund over which it had no control. Nor has Defendant provided any evidence that the check received from Debtor was not deposited into Defendant's account for general use. As the burden falls on the Defendant to show that it lacked the requisite dominion and control, *Argus*, 327 B.R. at 216, Defendant's "mere conduit" defense fails here.

## Conclusion

Since I hold that Defendant was a transferee, there is no genuine dispute as to a material fact in this matter. Accordingly, I will grant summary judgment in favor of Plaintiff.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Plaintiff's motion for summary Judgment (Doc. # 23) is **granted.**